[Crim. No. 321. Fifth Dist. May 4, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. ROBERT WILLIAM GRUBB, Defendant and Appellant.

William L. Graf, under appointment by the Court of Appeal, and Leavy & Graf for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Daniel J. Kremer and David L. Kelly, Deputy Attorneys General, for Plaintiff and Respondent.

GARGANO, J.—Defendant appeals from a judgment of conviction, after jury trial, of violation of section 12021 of the Penal Code, possession of a concealable weapon by a convicted felon. The sole question presented in this appeal is whether the weapon which was admitted into evidence over defendant's objection, and which was the basis for his conviction, was the product of an illegal search. The pertinent facts leading to this search are substantially as follows.

In January 1965 Lieutenant Crow of the El Dorado County sheriff's office received information from an informer by the name of John Reed that he (Reed) had personally observed marijuana being used in defendant's apartment which was located over his place of business, the Witch Doctor Beauty Salon. Reed also informed Officer Crow that one Donald Powers, who had a prior narcotics record, and who was residing with the defendant, possessed marijuana which he kept in the trunk of his car. Upon receiving this information Officer Crow investigated defendant's background and initiated a surveillance of his place of business which lasted approximately six months. The investigation revealed that defendant had a prior arrest record for possession of narcotics. The surveillance disclosed that Donald Powers, who also had a prior arrest record for illegal narcotic activities, frequented the

beauty salon and the apartment above. However, nothing further of significance occurred until on or about August 20, 1965, when James McCord was arrested on a common drunk charge. By then the defendant had apparently moved from the apartment over his place of business to a residence at Blackwood and Tamarack, where Officer Crow had observed his vehicle during the months of July and August. McCord, in an effort to gain favor for himself, informed Officer Crow that his neighbors, Dale Powers (Donald Powers' brother who had an arrest record involving transportation, possession and sale of narcotics) and his female companion, Margo Howard, had narcotics in the trailer in which they were living. Specifically, he informed Crow that he had personally observed the narcotics in the trailer, and that Dale Powers had mentioned defendant as a possible source of supply. McCord was released from custody on August 21, 1965, and that evening, under the undercover surveillance of Officer Crow, met the defendant at the defendant's beauty salon ostensively for the purpose of obtaining narcotics. However, on the following day McCord reported that he had tried to ''score'' but had failed. He further related to Crow, ''I can score, but it will take some time.'' On August 23, 1965, a search was conducted of the Powers' trailer, and this search uncovered a homemade hypodermic syringe, barbiturates and marijuana debris. After the search the officers arrested and interrogated Dale Powers and Margo Howard. Powers admitted that he knew defendant and that he had visited his residence (at Blackwood and Tamarack) and the beauty salon that very day. This information was already known to the officers who had been keeping Powers and Margo Howard under surveillance. Powers at first told the officers that defendant was not selling, or in possession of, narcotics; but later he stated, ''You can find narcotics at the house you followed us to today.'' At the beginning of the interview Margo Howard also told the officers that defendant was not in possession or dealing in narcotics, but according to Officer Crow, toward the end of her interview she stated, ''You can find narcotics in the garage of the house you followed us to today.'' On the basis of all of this information Officer Crow sought and received a warrant for the search of appellant's residence. However, it was stipulated at the trial by all parties that this search warrant was void (apparently because the affidavit in support thereof was not signed as required by the statute). Armed with the void search warrant, five law enforcement officials went to defendant's home early

in the morning of August 24, 1965. The defendant answered the door and, when confronted with the search warrant, permitted the officers to enter. The ensuing search uncovered a blue parka in which was found a .38 caliber revolver and a cigarette thought to be marijuana. Defendant denied ownership of the parka, but admitted that the gun was his. It is this gun which was used by the prosecution to convict defendant of violation of section 12021 of the Penal Code.

█ It is firmly established that a search which is made by a peace officer without a warrant is not per se unreasonable or in violation of a person's rights as guaranteed by the Fourth Amendment to the United States Constitution. In fact, it is settled that a search without a warrant made in connection with a lawful arrest and as an incident thereto is proper, and that evidence abduced therefrom is not deemed inadmissible as the product of an unreasonable search (*United States* v. *Rabinowitz,* 339 U.S. 56 [94 L.Ed. 653, 70 S.Ct. 430] ; *People* v. *Ingle,* 53 Cal.2d 407 [348 P.2d 577] (cert. den. 364 U.S. 841 [5 L.Ed.2d 65, 81 S.Ct. 79)] ; and *People* v. *Phillips,* 240 Cal. App.2d 197 [49 Cal.Rptr. 480] ). █ Under Penal Code section 836 an arrest is lawful without a warrant when a peace officer has reasonable cause to believe that the person arrested has committed a felony. Reasonable or probable cause exists when the facts and circumstances within the knowledge of the officers at the moment of arrest are sufficient to warrant a prudent man in believing that defendant has committed an offense (*People* v. *Talley,* 65 Cal.2d 830 [56 Cal.Rptr. 492, 423 P.2d 564] ). Thus, the first question is whether the officers who made the search of defendant's place of residence had reasonable cause to believe that he had committed a felony, and therefore whether defendant's arrest without a warrant was lawful.

We conclude that the answer to this question is in the affirmative. In fact, we conclude that the officers had ample justification to arrest the defendant without a warrant, and to search his apartment as an incident to his arrest. First, they were armed with information received from two separate informants, John Reed and James McCord. Reed, a reliable informant, had informed Officer Crow that defendant was involved in narcotics activities approximately six months earlier. Reed had been known to Crow since May of 1964 when he had been arrested on a fictitious check charge. Between May of 1964 and January 1965 he had given Crow several items of information which were apparently reliable, although they did not

lead directly to any arrests. McCord, an informer of unproved reliability, had informed Crow a few days prior to the search of defendant's residence that defendant was a possible source of narcotics supply. McCord's information, however, was not utilized until after it had been proved reliable by the subsequent search of Powers' trailer. Information provided by a known informer of unproved reliability is relevant on the issue of probable cause if it is corroborated by other evidence (*People* v. *Talley, supra,* 65 Cal.2d 830 [56 Cal.Rptr. 492, 423 P.2d 564]).

 Second, Officer Crow's independent investigation of defendant's background and the six months' surveillance of his activities revealed that not only did he have a prior arrest record for possession of narcotics, but he was associating with two other persons with prior narcotics records, Howard Powers and Dale Powers. In fact, one of the known offenders (Dale Powers) had introduced defendant to James McCord ostensibly for the purpose of enabling McCord to make a "score."

Third, the officers were equipped with information received from two persons arrested the evening before as suspects in connection with illegal narcotics activities. These suspects, Dale Powers and Margo Howard, had informed the officers that narcotics would be found in defendant's home. Although information received from an arrestee is not of itself sufficient to constitute probable cause, if it is corroborated by other facts, sources, or circumstances (as in the instant case), it is sufficient to justify reliance thereon (*People* v. *Reeves,* 61 Cal. 2d 268 [38 Cal.Rptr. 1, 391 P.2d 393]).

Having determined that the officers had probable cause to arrest the defendant without a warrant when they entered his residence in the early morning hours of August 24, we must now consider whether the fact that they evidently had time to and did first procure a warrant which turned out to be void, so tainted the resulting search as to render the evidence abduced therefrom inadmissible as the product of an unlawful search. In considering this question, however, we are mindful that we are not here concerned with an unannounced forceable entry, but rather we are concerned with a situation where (according to the evidence) the officers acted in good faith after an abundance of caution.

Defendant argues that since no great emergency existed the officers were required to obtain a warrant, even if they had reasonable or probable cause to believe that defendant had

committed a felony. He concludes that since they obtained a void warrant, their search without a warrant was unlawful and the evidence abduced therefrom inadmissible against him.

We do not agree with defendant's contention. In the first place, we do not necessarily agree with his assumption that no great emergency existed in this case, and that the officers were required to get a warrant before searching his residence. Time is almost always of the essence when narcotics are involved, for convictions are seldom obtained without evidence that a defendant had narcotics in his possession or under his control when the arrest was made. Furthermore, the officers had arrested Dale Powers and Margo Howard shortly before the search of defendant's residence was made. These persons had been associating with the defendant on the very day of their arrest, and from this and the information received from James McCord the officers were entitled to believe that the three suspects were involved in the same narcotics activities. Consequently, the officers could reasonably assume that if the news of their arrest reached the defendant he would dispose of any incriminating evidence which he had in his possession. Hence, the officers would have been entitled to act promptly without the necessity of procuring a warrant. ▨ Furthermore, when a search is made as an incident to a lawful arrest the controlling factor is not necessarily whether there was time to get a warrant, but rather it is whether the arrest itself was lawful. As stated by the United States Supreme Court in *United States* v. *Rabinowitz,* 339 U.S. 56, 65-66 [94 L.Ed. 653, 660, 70 S.Ct. 430, 435] : ''It is appropriate to note that the Constitution does not say that the right of the people to be secure in their persons should not be violated without a search warrant if it is practicable for the officers to procure one. The mandate of the Fourth Amendment is that the people shall be secure against *unreasonable* searches. It is not disputed that there may be reasonable searches, incident to an arrest, without a search warrant. Upon acceptance of this established rule that some authority to search follows from lawfully taking the person into custody, it becomes apparent that such searches turn upon the reasonableness under all the circumstances and not upon the practicability of procuring a search warrant, for the warrant is not required. To the extent that *Trupiano* v. *United States,* 334 U.S. 699 [92 L.Ed. 1663, 68 S.Ct. 1229], requires a search warrant solely upon the basis of the practicability of procuring it rather than upon the reasonableness of the search after a lawful arrest, that case is overruled. The

relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable. That criterion in turn depends upon the facts and circumstances—the total atmosphere of the case. It is a sufficient precaution that law officers must justify their conduct before courts which have always been, and must be, jealous of the individual's right of privacy within the broad sweep of the Fourth Amendment." And as the court observed in *Ker* v. *California*, 374 U.S. 23 [10 L.Ed.2d 726, 83 S.Ct. 1623, 1634]: "The practicability of obtaining a warrant is not the controlling factor when a search is sought to be justified as incident to arrest. . . ."

When viewed in its true light, defendant's contention is merely an assertion that since the officers took the trouble to seek a warrant they are now entrapped by their own caution and can no longer demonstrate that his arrest would have been lawful in the first instance without a warrant. We conclude to the contrary. In fact, we conclude that the prosecution properly and successfully justified the search as lawful without relying on the void warrant. ■ In short, it is our decision that a search made pursuant to a void warrant is not rendered unlawful, nor is the evidence abduced therefrom tainted with illegality if, as in this case, the officers who procured the warrant and made the search (1) had sufficient facts to justify the issuance of a warrant when the warrant was procured, (2) had probable cause to arrest the defendant when the search was made, and (3) were acting in good faith and the warrant was void because of inadvertent failure to comply with the technical requirements of the statute under which the warrant was issued. A contrary holding would turn law enforcement into a monstrous chess game in which the slightest tactical error by law enforcement officers could be fatal to the successful prosecution of a person accused of a heinous offense even though the intent, purposes and spirit of the Constitution had not been violated.

A somewhat analogous situation arose in the case of *Giordenello* v. *United States*, 357 U.S. 480 [2 L.Ed.2d 1503, 78 S.Ct. 1245]. In that case the warrant was void because the complaint upon which it was issued was defective in not providing a sufficient basis upon which a finding of probable cause could be made. On appeal the government for the first time attempted to justify the arrest apart from the warrant as an arrest based on probable cause under Texas law. The Supreme Court rejected this argument because in the lower court

the government had defended the legality of the arrest by relying entirely on the validity of the warrant. Thus, the court held that the issue of probable cause had not been properly raised in the trial court. The court, however, indicated that in the event of a new trial the government could seek to justify the petitioner's arrest without relying on the warrant.

Defendant contends that in any event the search of his home cannot be justified as an incident to a lawful arrest because the arrest was not made until after the gun was discovered and Officer Crow admitted that he would not have arrested defendant on a narcotics charge unless narcotics had been found in his house. Thus, he concludes that from this it is evident that the officers went to his residence primarily to make a search and to arrest him only if the search revealed incriminating narcotics.

This contention that the search could not be justified as an incident to a lawful arrest is also without merit. There is substantial evidence to support the trial court's finding that the officers believed that the defendant had actually committed a felony when they went to his residence with the void warrant, and that they intended to arrest him. In other words, there was sufficient evidence to justify finding that the purpose of the officers' visit to defendant's home on the morning of August 24 was to make an arrest and not to make an exploratory search. Moreover, Officer Crow's negative answer to the question, "Would you have arrested Mr. Grubb had you found no narcotics in the house?" was adequately explained by his remaining testimony, "I felt with what information I had on Mr. Grubb that I could have arrested him. However, I felt with no physical evidence we would not obtain a criminal complaint or a conviction upon said complaint. I wanted physical evidence in conjunction with the arrest." Finally, the fact that the search was made before the arrest is not critical where, as here, the defendant's arrest and not the search was the real object for the officers entering his home. As the Supreme Court stated in *People* v. *Hammond*, 54 Cal. 2d 846, 853 [9 Cal.Rptr. 233, 357 P.2d 289] : "A search which is made as an incident to a lawful arrest, based on reasonable cause to believe that the person arrested has committed a felony, is a lawful search even though made without a warrant [citations], and even though it occurs before rather than after the arrest. [Citations.] And as the court held in *People* v. *Koelzer*, 222 Cal.App.2d 20, 29 [34 Cal.Rptr. 718], for the evidence to be admissible it must simply be: ". . . the prod-

uct of a search incident to (but not necessarily following) a lawful arrest.''

The case of *People* v. *Haven,* 59 Cal.2d 713 [31 Cal.Rptr. 47, 381 P.2d 927], is clearly distinguishable. In that case the defendant was confronted by the officers in the home of his mother-in-law. The officers did not have a search warrant but defendant produced narcotics equipment of his own accord. The officers, however, purposely delayed his arrest so that they could search his hotel room where narcotics were ultimately discovered. Thus, in that case the officers obviously went to defendant's hotel room to search it and not to arrest the defendant.

The judgment is affirmed.

Conley, P. J., and Stone, J., concurred.