FOURT, J.
 

 This is an appeal from a judgment of conviction of possession of heroin for sale.
 

 In an information filed in Los Angeles on December 11, 1964, it was charged that defendant did on October 29, 1964, possess heroin for sale. It was further charged that defendant previously had been found guilty of breaking and entering a motor vehicle in Texas in 1955 and that he had served a term in the state prison therefor; further that in 1962 in Los Angeles he had been convicted of a violation of section 12021, Penal Code (alien or narcotics addict possessing concealable firearm), and in 1964 in Los Angeles he had been found guilty of a violation of section 11500.5, Health and Safety Code, and had served a term of imprisonment therefor in the state prison. Defendant pleaded not guilty and denied the charged prior convictions. A jury trial was waived and defendant was found guilty as charged in the information. The first charged prior conviction was found to be untrue (in
 
 *476
 
 that defendant was a juvenile at the time), the second charged prior conviction was found to be true. The third charged prior conviction was dismissed upon motion of the prosecution.
 

 Defendant has appealed “from conviction, sentencing and denial of motion for New Trial . . . We will consider the appeal as being from the judgment.
 

 A résumé of some of the facts is as follows: At about 7:15 p.m. October 29, 1964, Officer Sanchez, an 18 years’ veteran of the Los Angeles Police Department (the last eight years in the narcotics division) and Deputy Sheriff Weldon, with a search warrant, proceeded to the area of 3212 South Main Street, Los Angeles. The search warrant was for an apartment numbered 210 located at 3212 South Main Street, a 1960 Cadillac coupé, green in color, license number PYH 578 (1964 plates) and Raul Moody. At about 7:20 p.m. the officers saw defendant get out of the automobile described in the warrant, at the corner of 32d and South Main Streets and proceed towards the rear of the apartment above mentioned.
 

 Moody was arrested about a block and a half or two blocks away from the apartment. Moody was in an automobile at the time of his arrest. The officers proceeded to the named apartment and entered through an open door. Before entering, and as they proceeded through the entrance to the apartment, the officers saw defendant seated on a couch. The apartment was a one-room affair with a kitchen off of the single room. Officer Sanchez went into the kitchen area where Juan Majie was standing. Deputy Weldon approached defendant and asked defendant what his name was. Defendant stated his name was Jose Gomez. Defendant was asked whether he had any identification and he responded in the negative. Defendant then stood up.
 

 Officer Sanchez, after making a quick pat-down search for weapons on Majie, walked toward defendant and was standing close to defendant. He smelled what appeared to be a strong odor of acid associated with freshly processed heroin and observed a bulge in the right pocket of defendant’s coat. Officer Sanchez concluded that the odor was from heroin. He was concerned as to whether defendant had a weapon in his pocket for in his experience as a narcotics policeman he was aware of situations wherein suspects did carry weapons in their pockets. Officer Sanchez asked defendant what it was that he had in the pocket, whereupon "defendant broke and ran. While running toward the door defendant reached into
 
 *477
 
 his pocket and threw a paper bag onto the bed. Deputy Weldon grabbed the defendant at the door. It was then that Officer Sanchez abandoned the idea that perhaps defendant was armed and that the bulge in the pocket was a firearm.
 

 Officer Sanchez examined the contents of the bag and found five containers of heroin, totaling about 130 grams of 25 percent pure heroin. Officer Sanchez then searched the apartment and found a can of Merick milk sugar (used in processing heroin for sale) in the kitchen, and several dozen rubber prophylactics. Officer Sanchez stated that it would take a substantial user of heroin about three or four months to use the amount of heroin in question and that defendant apparently was not a user of heroin.
 

 Appellant makes no contention that he was not possessed of the heroin in question, but he argues that the affidavit underlying the search warrant was not supported by probable cause, that the warrant which provided for the searching of all persons in the automobile is fatally defective and that the search was not an incident to a lawful arrest.
 

 Appellant places considerable reliance in
 
 Aguilar
 
 v.
 
 Texas,
 
 378 U.S. 108 [12 L.Ed.2d 723, 84 S.Ct. 1509], but in
 
 Aguilar,
 
 at page 109 [12 L.Ed.2d at page 725], the affidavit for the warrant merely stated: “ ‘Affiants have received reliable information from a credible person and do believe that heroin, marijuana, barbiturates and other narcotics and narcotic paraphernalia are being kept at the above described premises for the purpose of sale and use contrary to the provisions of the law.’ ”
 

 In other words, there was no factual showing of the reliability of the informer and, in short, the affidavit does no more than state that Aguilar possessed narcotics, which the court found was insufficient as a basis for probable cause. Or, saying it in still another way, the belief of affiant was- based upon unspecified information from an informant and unspecified observations of the premises by the police.
 

 In
 
 People
 
 v.
 
 West,
 
 237 Cal.App.2d 801, 805, 807 [47 Cal.Rptr. 341], it is stated:
 
 “Aguilar
 
 makes clear that a petition for a search warrant based solely on information from a reliable informant must set forth sufficient data in the supporting affidavit (1) to show that the informant is in fact reliable, and (2) to disclose the source of informant’s knowledge so that the examining magistrate can himself determine whether probable cause exists for the issue of the warrant.” (P. 805.)
 

 And at page 807 it is stated: “. . . It is, of course, possible
 
 *478
 
 for an informant’s bare conclusion to be buttressed by secondary information, which itself does not amount to probable cause but which fortifies the first, and for the two in combination to provide sufficient cause for the issue of a search warrant. ’ ’
 

 In
 
 People
 
 v.
 
 Barthel,
 
 231 Cal.App.2d 827, 831-832 [42 Cal.Rptr. 290], it is said: “In the ease before us the supporting affidavit by Officer Guerin alleged that he received information from an undisclosed informant that horse racing bets were being accepted by a woman over the telephone number CY 8-6056; this informant on six occasions had supplied information which had led to the conviction of 14 persons for bookmaking and it was in the public’s interest not to disclose the informant’s identity; it was also alleged that an independent investigation revealed that the telephone and utilities were listed to M. R. Barthel, 3609 Curlew Street, who had a record of bookmaking convictions.
 

 “Thus, this affidavit is distinguishable from the affidavits condemned by the United States Supreme Court in the
 
 Aguilar
 
 and
 
 Giordenello [Giordenello
 
 v.
 
 United States,
 
 357 U.S. 480 (2 L.Ed.2d 1503, 78 S.Ct. 1245)] cases. Here the informant told the officer that bets were being received by a woman over a specific telephone number. This implies personal knowledge of the informant which when coupled with the obvious reliability of the informant, and the information produced by the independent investigation, leads to the conclusion that there was compliance with constitutional standards. [Citations.] ”
 

 In the case at bench the affidavit for the search warrant sets forth that the informant told the affiant that Raul Moody was in possession of a large amount of heroin and that it was located in a certain apartment at a certain address, and, further, that Moody was using a particular car for the purposes of delivering heroin. The affiant considered the informant reliable because on four previous occasions the informant had provided information which affiant found to be true and which led to arrests and convictions. Further, affiant knew Moody, having arrested him for violating sections 11500 and 11500.5 of the Health and Safety Code. It can be implied that the informant was in possession of personal knowledge for he related that the apartment was used as a warehouse and described the car used to facilitate the delivery of the heroin. There was probable cause for the issuance of the search warrant.
 

 
 *479
 
 In
 
 People
 
 v.
 
 Gallardo,
 
 244 Cal.App.2d 105, 109-110 [52 Cal.Rptr. 777], it is appropriately written: “ 1 [W]hen a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a eommonsense, manner. Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants. ’ [ Citation. ] ’ ’
 

 The court pointed out in
 
 West, supra,
 
 page 807, that it appreciated that disclosure “. . . of specific information about the informant’s source of knowledge may go far to reveal his identity and thus further reduce the already-shortened life expectancy of police informants in narcotics cases— to the detriment of public order and of effective law enforcement. ’ ’
 

 And in
 
 People
 
 v.
 
 Wells,
 
 245 Cal.App.2d 203, 207 [53 Cal.Rptr. 762], the court said: “Of course, as appellant accurately observes it has been held in both the state and federal courts that even a tested and reliable informant’s bald eonclusional statement without any supporting facts is insufficient to sustain the issuance of a search warrant unless such information is otherwise corroborated. [Citation.] However, as we were at pains to point out in
 
 West,
 
 it is not always necessary, desirable or even possible that such additional corroboration take the form of a detailed recital of the sources of the reliable informant’s knowledge.
 

 “In the instant case, as in
 
 West,
 
 appellant’s possession of a loaded .38 caliber revolver demonstrates the reasonableness of the officers’ conclusion that the identity of their informants should be guarded with scrupulous care. One of the officers also explained their reluctance to undertake a close surveillance of this appellant as follows: ‘I felt that until the time we were ready to execute the warrant, knowing persons of Mr. Wells’ caliber as a large dealer of narcotics, we like to not try and stake the house or be seen anywhere in the location because I feel that if a man is a big enough dope peddler, if he sees us in the area, someone is going to tell him and it will put him on his guagd. ’ ’ ’
 

 There is nothing about an affidavit for a search warrant which warrants any special, unusual or extraordinary interpretation ; in fact it is fairly simple, for as the Supreme Court
 
 *480
 
 said in
 
 People
 
 v.
 
 Stout,
 
 66 Cal.2d 184, 192-193 [57 Cal.Rptr. 152, 424 P.2d 704] :
 

 “In determining the sufficiency of an affidavit for the issuance of a search warrant, the test of probable cause is approximately the same as that applicable to an arrest without a warrant, a commitment by a magistrate or an indictment by a grand jury [citations] namely, whether the facts contained in the affidavit are such as would lead a man of ordinary caution or prudence to believe, and conscientiously entertain, a strong suspicion of the guilt of the accused. [Citation.] The warrant can be upset only if the affidavit fails as a matter of law to set forth sufficient competent evidence supportive of the magistrate’s finding of probable cause since it is the function of the trier of fact, not the reviewing court, to appraise and weigh evidence when presented by affidavit as well, as when presented by oral testimony. [Citations.] ”
 

 The claim that the warrant was defective because it gave authority to search “all persons in a vehicle” is of little moment or assistance to appellant. He was not searched as a “person in a vehicle” and that proviso of the warrant does not involve appellant although the fact is that he shortly before the search of the house left the automobile described in the search warrant and entered the apartment.
 

 Here the officers were justified in having concern about their own safety. The propriety of officers making a reasonable superficial search for concealed weapons under proper circumstances to the end that they will not be shot at has been recognized repeatedly.
 
 (People
 
 v.
 
 Alvarado,
 
 250 Cal.App.2d 584, 590 [58 Cal.Rptr. 822];
 
 People
 
 v.
 
 Garrett,
 
 238 Cal.App.2d 324, 327 [47 Cal.Rptr. 731];
 
 People
 
 v.
 
 Martines,
 
 228 Cal.App.2d 245, 247 [39 Cal.Rptr. 526];
 
 People
 
 v.
 
 Mickelson,
 
 59 Cal.2d 448, 450 [30 Cal.Rptr. 18, 380 P.2d 658];
 
 People
 
 v.
 
 Hilliard,
 
 221 Cal.App.2d 719, 723 [34 Cal.Rptr. 809].) In this ease the officers simply asked appellant what it was that caused the bulge in his pocket and with that appellant started to run towards the door. Appellant threw the paper bag containing the heroin onto the bed. It would seem clear that appellant, in fact, was never searched as that term is usually used. This court said in
 
 People
 
 v.
 
 West,
 
 144 Cal.App.2d 214, 219-220 [300 P.2d 729] : “. . .As used in this connection, the term implies some exploratory investigation or an invasion and quest, a looking for or seeldng out. The. quest may be secret, intrusive or accomplished by force, and it has been held that a search implies some sort of force, either actual or
 
 *481
 
 constructive, much or little. A search implies a prying into hidden places for that which is concealed and that the object searched for has been hidden or intentionally put out of the way. While it has been said that ordinarily searching is a function of sight, it is generally held that the mere looking at that which is open to view is not a ‘search.’ A seizure contemplates a forcible dispossession of the owner and it is not a voluntary surrender.” (See also
 
 People
 
 v.
 
 Norton,
 
 209 Cal.App.2d 173, 176 [25 Cal.Rptr.
 
 676]; People
 
 v.
 
 Young,
 
 214 Cal.App.2d 131, 134-135 [29 Cal.Rptr. 492].)
 

 The officers were legally on the premises and under the circumstances heretofore related they were warranted in doing what they did.
 

 The judgment is affirmed. The purported appeal from the order denying a motion for a new trial is dismissed.
 

 Wood, P. J., and Lillie, J., concurred.
 

 A petition for a rehearing was denied November 14, 1967, and appellant’s petition for a hearing by the Supreme Court was denied December 27, 1967.