[Crim. No. 12642.   In Bank.   May 28, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. NORA MAE HAMILTON et al., Defendants and Appellants.

Marshall Miles and Alan T. Selznick, under appointments by the Supreme Court, for Defendants and Appellants.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Frederick R. Millar, Jr., Deputy Attorney General, for Plaintiff and Respondent.

SULLIVAN, J.—Defendants were charged by information with possession of heroin (Health & Saf. Code, § 11500) and in a second count with possession for sale of amphetamine, a restricted dangerous drug (Health & Saf. Code, § 11911). After a trial by jury they were found guilty as charged, and each was sentenced to state prison for the term prescribed by law. They appeal from the judgments.

On July 14, 1967, about 11:20 p.m., Edward Noriega, a state narcotics agent, together with several other law enforcement officers, went to a single-family residence in Upland, California, for the purpose of executing a search warrant. Apparently the front door was open and only an unlocked screen door stood between the officers and the interior of the premises. Agent Noriega and another officer went to the screen door and knocked, and a small child appeared in the doorway behind the screen door. The agent asked the child whether her mother or "Tony"[1] was at home. The child answered

---

[1] The persons named in the warrant and alleged in the supporting affidavit to be in possession of narcotics at the subject address were "Jane Doe Nora also known as Nora Mae Hamilton and John Doe Tony."

"Yes," turned, and began walking down a hallway toward the rear of the house. Agent Noriega opened the screen door and followed the child down the hallway. As he approached the door to a rear bedroom, he encountered defendant Hamilton emerging from the bedroom. Looking through the doorway the agent saw defendant Lerma sitting on one of the beds. Before him on the bed were seven bindles of heroin. A subsequent search of the premises revealed a quantity of amphetamine tablets.

Defendants contend that Agent Noriega's entry into their residence was made in violation of section 1531 of the Penal Code,[2] that the evidence obtained as a result of that entry was therefore illegally obtained and should not have been admitted, and that the judgments must be reversed because such evidence was crucial to the convictions. Because the trial of the instant case took place prior to our decision in *People* v. *Gastelo* (1967) 67 Cal.2d 586 [63 Cal.Rptr. 10, 432 P.2d 706], defendants may raise this contention for the first time on appeal in spite of the fact that they did not object to the admission of the subject evidence on the ground of noncompliance with section 1531. (*People* v. *De Santiago* (1969) *ante*, p. 18 [76 Cal.Rptr. 809, 453 P.2d 353].)

It is undisputed that the officers' conduct prior to entry did not constitute compliance with the provisions of section 1531. Moreover, the record provides no basis to conclude that compliance with that section was excused because of specific factual circumstances giving rise to a reasonable belief on the part of the officers that unannounced entry was necessary to prevent destruction of evidence, discourage escape, or insure the officers' safety. It therefore appears that the entry and the subsequent seizure of evidence were illegal. Because the evidence so obtained was crucial to the convictions, the judgments must be reversed.

The conclusions stated above do not, of course, preclude the possibility of retrial and renewed efforts by the prosecution at that time to show specific facts known to the officers which justified their noncompliance with section 1531. In view of this possibility we deem it expedient to consider at this time one other issue advanced by defendants which may arise again upon retrial. That issue concerns the sufficiency of the affida-

---

[2]Section 1531 provides: "The officer may break open any outer or inner door or window of a house, or any part of a house or anything therein, to execute the warrant, if, after notice of his authority and purpose, he is refused admittance."

vit in support of the warrant upon the authority of which the entry was undertaken.[3]

The affidavit in support of the warrant was subscribed and sworn to by Agent Noriega, the arresting officer. It alleged in relevant part as follows: "That said affiant was informed on July 13, 1967, by confidential reliable informant that Jane Doe Nora also known as Nora Mae Hamilton and John Doe Tony have in their possession at a white single story, one family dwelling located at 822 W. Alpine Street, Upland, Calif. approximately three hundred (300) rolls of dangerous drugs wrapped in tin foil in groups of ten pills per roll. [Par.] That further your affiant reviewed San Bernardino County Sheriff Office report No. D.R. 112302 which indicated Nora Mae Hamilton and Raymond David Padilla were arrested at 822 W. Alpine Street, Upland, California, on April 14, 1967 for Possession of Marijuana and Possession of dangerous drugs found there. The pills found in the April 14, 1967 arrest were amphetamine, wrapped in tin foil in groups of 10. [Par.] That said confidential reliable informant has furnished information in the past which has lead [sic] to eight (8) arrest[s] and convictions for narcotic and dangerous drug offense."

In *Aguilar* v. *Texas* (1964) 378 U.S. 108 [12 L.Ed.2d 723, 84 S.Ct. 1509], the United States Supreme Court stated: "Although an affidavit may be based upon hearsay information and need not reflect the direct personal observations of the affiant, [citation], the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed [citation], was 'credible' or his information 'reliable'." (Fn. omitted.) (378 U.S. at p. 114 [12 L.Ed.2d at p. 728].) The high court has since referred to this formulation as "*Aguilar's* two-pronged test." (*Spinelli* v. *United States* (1969) 393 U.S. 410, 413 [21 L.Ed.2d 637, 642, 89 S.Ct. 584].)

Following *Aguilar*, California courts have held that for an affidavit based on an informant's hearsay statement to be legally sufficient to support the issuance of a search warrant, two requirements must be met: (1) the affidavit must allege

[3]Defendants challenged the sufficiency of the affidavit both at the preliminary examination and at trial by means of motions to quash the warrant, return the property seized, and suppress evidence.

the informant's statement in language that is factual rather than conclusionary and must establish that the informant spoke with personal knowledge of the matters contained in such statement; and (2) the affidavit must contain some underlying factual information from which the magistrate issuing the warrant can reasonably conclude that the informant was credible or his information reliable. (*People* v. *Tillman* (1965) 238 Cal.App.2d 134, 138 [47 Cal.Rptr. 614]; *People* v. *West* (1965) 237 Cal.App.2d 801, 804-805 [47 Cal. Rptr. 341]; see *People* v. *Aguilar* (1966) 240 Cal.App.2d 502, 509-511 [49 Cal.Rptr. 584].)

It is the first "prong" of the *Aguilar* test which strikes the affidavit now before us: that document undertakes absolutely no effort to set forth any of "the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were. . . ." (*Aguilar* v. *Texas, supra,* 378 U.S. 108, 114 [12 L.Ed.2d 723, 728, 84 S.Ct. 1509].)

An apt parallel is provided by the recent case of *Spinelli* v. *United States, supra,* 393 U.S. 410. In that case the affidavit stated that the F.B.I., one of whose agents had prepared the affidavit, " 'has been informed by a confidential reliable informant that William Spinelli is operating a handbook and accepting wagers and disseminating wagering information by means of the telephones which have been assigned the numbers WYdown 4-0029 and WYdown 4-0136.' " (393 U.S. at p. 422 [21 L.Ed.2d at p. 642].) The affidavit also stated that independent investigation had confirmed that the telephones in question were located in a certain apartment at which Spinelli was a frequent visitor. The court, holding that the affidavit fell short of constitutional sufficiency because it did not reveal the basis of the informant's conclusion, stated: "The tip [of the informant as reflected in the affidavit] does not contain a sufficient statement of the underlying circumstances from which the informer concluded that Spinelli was running a bookmaking operation. We are not told how the FBI's source received his information—it is not alleged that the informant personally observed Spinelli at work or that he ever placed a bet with him. Moreover, if the informant came by the information indirectly, he did not explain why his sources were reliable. Compare *Jaben* v. *United States,* 381 U.S. 214 [14 L.Ed.2d 345, 85 S.Ct. 1365] (1965). In the absence of a statement detailing the manner in which the information was gathered, it is especially important that the tip described the accused's criminal activity in sufficient detail so that the

magistrate may know that he is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation." (393 U.S. at p. 416 [21 L.Ed.2d at p. 643].)

The People, emphasizing the idea expressed in the last sentence above quoted, urge that the instant case differs from *Spinelli* in that here the criminal activity was described "in sufficient detail" to permit the *inference* that the informant had personal knowledge. Emphasis is placed upon the affidavit's allegation, attributed to the informant, that the contraband harbored at the premises to be searched was "approximately three hundred (300) rolls of dangerous drugs wrapped in tin foil in groups of ten pills per roll." It is urged that only one who had personal knowledge would be able to make such an exact statement as to the quantity and preparation of the contraband, and that therefore we should *infer* such knowledge in spite of the lack of direct factual allegations on the point. This contention is not without some support in the authorities. (See *People* v. *Cain* (1968) 261 Cal.App.2d 383, 386 [67 Cal.Rptr. 922]; *People* v. *Hernandez* (1967) 255 Cal.App.2d 478, 481-482 [63 Cal.Rptr. 133]; *People* v. *Barthel* (1965) 231 Cal.App.2d 827, 831-832 [42 Cal. Rptr. 290].)

While we do not reject the possibility that an informant who fails to provide factual allegations of his own experience might nevertheless provide a description of the contraband itself or its particular location so detailed as to warrant the inference of personal observation, we do not believe that the description here in question is sufficient for that purpose. In the *Spinelli* case it was urged that the facts provided by the informant, and especially the specific telephone numbers given by him, were sufficient to show "that the informer had gained his information in a reliable way." The court rejected this argument: "This meager report could easily have been obtained from an offhand remark heard at a neighborhood bar." (393 U.S. at p. 417 [21 L.Ed.2d at p. 644].) Similarly in the instant case the informant could have obtained his information as to the amount of dangerous drugs involved and the way in which it was packaged from an unreliable source. In order to infer in the absence of direct factual allegations that the informant had personal knowledge of the incriminating facts related by him we must insist upon more significant detail than is present in the instant affidavit.

In view of the foregoing we hold that the affidavit in sup-

port of the search warrant here involved was insufficient to meet the standards set forth in *Aguilar.*

The People further contend, however, that even if the affidavit was insufficient to support the warrant, Agent Noriega had probable cause to arrest and the search was proper as incident to arrest. Reference is made to the transcript of the motions to quash the search warrant and suppress evidence which were heard at the time of the preliminary examination (see fn. 3, *ante*) and to Agent Noriega's testimony therein to the effect that his informant actually had personal knowledge of the incriminating facts reflected in the affidavit, although the affidavit itself did not show personal knowledge. Reliance is placed upon the cases of *People* v. *Chimel* (1968) 68 Cal.2d 436, 440-442 [67 Cal.Rptr. 421, 439 P.2d 333], and *People* v. *Castro* (1967) 249 Cal.App.2d 168, 173-176 [57 Cal.Rptr. 108], and it is urged that here, as in those cases, we should not in effect undertake to penalize the officer for obtaining a warrant by ignoring facts known to him but not included in the affidavit through oversight.

While we hasten to reaffirm the principles stated in *Chimel*[4] and *Castro,* it appears that in each of those cases the defendant was informed at the trial level that the prosecution did not intend to place exclusive reliance on the warrant. (See also *People* v. *Grubb* (1967) 250 Cal.App.2d 714, 720 [58 Cal.Rptr. 670].) In the instant case, on the other hand, no specific attempt was made to show probable cause *aliunde* the warrant until the case was on appeal. (See *Giordenello* v. *United* States (1958) 357 U.S. 480, 487-488 [2 L.Ed.2d 1503, 1510-1511, 78 S.Ct. 1245].) Although defendants' examination of Agent Noriega upon their motions to quash the warrant and suppress evidence gave them the opportunity to examine him upon the factual elements upon which a showing of probable cause *aliunde* the warrant would be based, the present posture of the case does not require that we determine whether the presence of that opportunity should allow the People to raise the issue for the first time on appeal. Upon retrial the People are free to seek to justify defendants' arrest and the incidental search without relying on the warrant.

We do not here discuss other contentions raised by defendants which are unlikely to arise upon retrial.

[4]We note that the United States Supreme Court has granted certiorari in *People* v. *Chimel.* (*Chimel* v. *California* (1968) 393 U.S. 958 [21 L.Ed.2d 372, 89 S.Ct. 404].)

The judgments are reversed.

Traynor, C. J., Peters, J., and Tobriner, J., concurred.

BURKE, J.—I concur in the reversal of the judgments.

MOSK, J., Concurring and Dissenting.—I concur in the judgment. The conclusion is inescapable that the officer, in his eagerness to serve a warrant, neglected to comply fully with section 1531 of the Penal Code.

I do not agree, however, that the affidavit in support of the warrant was insufficient as a matter of law. Certainly it does not have the precision of a model legal document. But courts cannot be oblivious to the fact that warrant affidavits are not drafted· by lawyers; they are prepared, generally hurriedly because of exigent circumstances, by laymen with limited legal background.

This affidavit indicates narcotics were in the possession of named persons at an identified site on a date certain. The quantity and the manner of packaging of the contraband are specifically described. The process is confirmed by reference to a previous arrest involving similar packaging. The reliability of the informer is verified. Thus the affidavit is not a recitation of mere rumor, and it meets the standards prescribed in *Aguilar* v. *Texas* (1964) 378 U.S. 108 [12 L.Ed.2d 723, 84 S.Ct. 1509], and *Spinelli* v. *United States* (1969) 393 U.S. 410 [21 L.Ed.2d 637, 89 S.Ct. 584]. (Cf. my dissent in *People* v. *Sesslin* (1968) 68 Cal.2d 418, 431-432 [67 Cal.Rptr. 409, 439 P.2d 321].)

If reviewing courts are to insist that affidavits for warrants be drafted with the finesse of a Montgomery Street contract, the result will be discouraging to law enforcement agencies that desire to employ warrant procedures. After all, it is much simpler for police officers to rely upon probable cause. I would demonstrate more tolerance of affidavits for warrants, and would begin with the one involved in this case.

McCOMB, J.—I dissent. I would affirm the judgment for the reasons expressed by Mr. Presiding Justice McCabe in the opinion prepared by him for the Court of Appeal in *People* v. *Hamilton* (Cal.App.) 70 Cal.Rptr. 58.