[Crim. No. 750. Fifth Dist. Jan. 6, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
HERBERT LARRY HILL, Defendant and Appellant.

296

COUNSEL

William S. Gregory, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, and Jack R. Winkler, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

**GARGANO, J.**—On March 16, 1968, several police officers of the Yuba City Police Department entered appellant's apartment at 357 Ainsley

Avenue, Yuba City, California, with a search warrant and found a usable quantity of marijuana and 13 LSD capsules. Appellant was arrested ·and charged with possession of marijuana in violation of Health and Safety Code section 11530, and possession of restricted dangerous drugs in violation of Health and Safety Code section 11910.

After several unsuccessful efforts to suppress the evidence seized in his apartment, appellant pleaded guilty to the charge of unlawful possession of marijuana. The second charge, possession of restricted dangerous drugs, was dismissed. Appellant appeals from the judgment entered on his guilty plea, pursuant to the provisions of Penal Code section 1538.5 subdivision (m). He challenges both the sufficiency of the affidavit upon which the search warrant was issued and the manner in which the warrant was executed.

The challenged affidavit was prepared by Detective Roy D. Whiteaker of the Yuba City Police Department, largely on information furnished by a police informant, James Ronald Brooks. Brooks contacted Detective Whiteaker on March 16, 1968, and told him that certain parties residing in an apartment house at 357 Ainsley Avenue were planning to transport two kilograms of marijuana from San Francisco to their apartment, at about 3 o'clock that afternoon. The informer, at Whiteaker's direction, then went to the Ainsley Avenue apartment house to obtain more information if possible. Later, Brooks told the detective that upon his arrival at the apartment house he was invited into an apartment belonging to four airmen from Beale Air Force Base. One of the airmen was under the influence of narcotics; his eyes were glazed and dilated. After a few minutes, two airmen went to appellant's apartment next door and returned with appellant. Appellant asked what Brooks wanted, and Brooks answered "grass." Appellant looked at an airman named Vern and said, "I don't want to," and returned to his apartment alone. Brooks stated that appellant was also under the influence of narcotics, and that Vern had referred to him as an "acid freak."

After acquiring the search warrant, Detective Whiteaker, Detective Sergeant Smith, and several other officers of the Yuba City Police Department, the Sutter County District Attorney and the assistant district attorney, all went to the apartment house at 357 Ainsley Avenue to conduct the search. On their arrival, several officers entered the apartment belonging to four airmen and searched it; nothing was found in that apartment. Meanwhile, the rest of the party proceeded to appellant's apartment· door. Detective Sergeant Smith knocked on the the door and announced, "Police officers, and we have a search warrant." He asked the occupants to open the door. After a few moments, appellant pulled the window curtains apart from inside and looked out; he stared at Mr. Teja, the district attorney, for

"three or four seconds" and disappeared from view. Then the officers heard a shuffling of feet and the sound of people moving quickly about the apartment. Detective Sergeant Smith ordered a police officer to break the door, and the officers entered the apartment. A search uncovered partially smoked marijuana cigarettes, marijuana seeds, a "usable quantity" of marijuana and 13 LSD capsules.

■ The first question we must decide in this appeal is whether the information furnished by the informant Brooks to Detective Whiteaker as set forth in Whiteaker's affidavit meets the "two-pronged test" of *Aguilar* v. *Texas*, 378 U.S. 108 [12 L.Ed.2d 723, 84 S.Ct. 1509].[1] We believe that it does. Brooks spoke with personal knowledge, and his information was "factual rather than conclusionary." Moreover, the affidavit alleges facts from which a magistrate could reasonably conclude that the informant was "credible" and his information reliable; Brooks had previously supplied information to Whiteaker leading to an arrest for narcotics violations. In addition, Whiteaker watched Brooks enter the airmen's apartment and then saw appellant go into the apartment with two airmen and leave alone a few minutes later, as Brooks recounted.

■ The second question is whether the affidavit contains sufficient factual information to lead a man of ordinary caution or prudence to believe and conscientiously entertain a strong suspicion that appellant had marijuana in his apartment at the Ainsley Avenue address. (See *People* v. *Stout*, 66 Cal.2d 184, 193 [57 Cal.Rptr. 152, 424 P.2d 704].) We conclude that the answer to this question is also in the affirmative. Detective Whiteaker not only received the critical information to which we have referred from a reliable informant, but this information was corroborated by other independent evidence. The affidavit alleged that the Office of Special Investigation at Beale Air Force Base informed Detective Sergeant Smith that one of the suspect airmen had told a fellow serviceman that he had taken $100 from his bank account to buy part of two kilograms of marijuana. The affidavit also alleged that appellant had been convicted of a narcotics offense and that the Sutter County sheriff's office had received confidential information that he was again using narcotics.[2]

---

[1] This test was interpreted by the California Supreme Court in *People* v. *Hamilton*, 71 Cal.2d 176, 179-180 [77 Cal.Rptr. 785, 454 P.2d 681], as follows: (1) The affidavit must allege the informant's statement in language that is factual rather than conclusionary and must establish that the informant spoke with personal knowledge of the matters contained in such statement; and (2) the affidavit must contain some underlying factual information from which the magistrate issuing the warrant can reasonably conclude that the informant was credible or his information reliable.

[2] While it is true that a narcotics conviction is not of itself enough to support a search warrant, it is nevertheless a circumstance which may be considered in assessing

■ In rebuttal, appellant argues that no showing was made to indicate that Brooks was qualified to judge whether a person was under the influence of narcotics. But, according to the affidavit, Brooks was accustomed to dealing with narcotic users, and he stated that the eyes of the airman were glazed and dilated, a typical symptom of narcotic use. ■ Appellant also maintains that there was nothing in the affidavit to suggest that there was any marijuana in his apartment. However, the affidavit alleges that when Brooks told appellant that he wanted to buy some "grass," appellant looked at an airman and answered, "I don't want to." The logical import of this statement was that appellant had some marijuana in his apartment but did not wish to sell it to Brooks. Finally, appellant asserts that the information which Sergeant Smith received from the Sutter County sheriff's office and from the Office of Special Investigation at Beale Air Force Base, was based on hearsay. It was hearsay, but was corroborative only, and from this standpoint had evidentiary value. ■ As the United States Supreme Court stated in *Aguilar* v. *Texas, supra,* 378 U.S. 108, 111 [12 L.Ed.2d 723, 726, 84 S.Ct. 1509]: ". . . when a search is based upon a magistrate's, rather than a police officer's, determination of probable cause the reviewing courts will accept evidence of a less 'judicially competent or persuasive character than would have justified an officer in acting on his own without a warrant,' *ibid.,* and will sustain the judicial determination so long as 'there was substantial basis for [the magistrate] to conclude that narcotics were probably present. . . .' "

Appellant's second contention that the search warrant was improperly executed is founded on the proposition that the officers violated Penal Code section 1531 when they broke into his apartment. Specifically, appellant asserts that he did not deny the officers permission to enter, and the officers had no reason to break down the door because they were looking for two kilograms of marijuana, and this quantity of marijuana could not be disposed of readily. In brief, appellant concludes that because there was no emergency, and because he did not specifically deny the officers permission to enter, they should have re-announced their presence and waited for some response before breaking down the door.

We are not persuaded by these arguments. ■ When the officers arrived at appellant's apartment door, Detective Sergeant Smith announced their presence, stated that they had a warrant, and asked the occupants to open the door. Instead of responding vocally, or opening the door, appellant looked out of the window and stared at the district attorney for "three or four seconds." Appellant then disappeared behind the curtains, and the officers heard a shuffling of feet and the sound of people moving quickly

---

probable cause. (*People* v. *Morales,* 259 Cal.App.2d 290 [66 Cal.Rptr. 234]; *People* v. *Machel,* 234 Cal.App.2d 37 [44 Cal.Rptr. 126].)

about the apartment. Under these circumstances, the officers had good cause to believe that defendant had denied them admittance and that he did not intend to open the door until all incriminating evidence had been destroyed. ■ Although Penal Code section 1531 requires an officer who is serving a search warrant to announce his presence and request admission, it also authorizes the officer to break open any outer or inner door or window if he is refused admittance. Moreover, while it may be true that the officers were expecting to find two kilograms of marijuana in appellant's apartment, the warrant authorized them to look for "any usable quantity." It is common knowledge that a "usable quantity" of narcotics is readily disposed of by depositing the illegal substance in the toilet bowl and flushing the toilet. Thus, greater leeway is allowed to an officer who is looking for marijuana or any other contraband which may be easily destroyed. Retreating footsteps or hurried activity after the officer had announced his presence has been held sufficient to warrant a forced entry (*People* v. *Maddox*, 46 Cal.2d 301, 306 [294 P.2d 6]; *People* v. *Barthel*, 231 Cal.App.2d 827 [42 Cal.Rptr. 290]).

The judgment is affirmed.

Stone, P. J., and Coakley, J., concurred.