[Civ. No. 31784. First Dist., Div. One. Jan. 15, 1973.]

HENRY T. GARCIA et al., Petitioners, v.
THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

James C. Hooley, Public Defender, Gary M. Sirbu, Assistant Public Defender, and G. Ernest Lopez for Petitioners.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, Doris H. Maier, Assistant Attorney General, W. Eric Collins and Nancy S. Reller, Deputy Attorneys General, for Respondent and Real Party in Interest.

**OPINION**

**MOLINARI, P. J.**—In this proceeding we issued an alternative writ of mandate to review the denial of a motion to suppress evidence made pursuant to Penal Code section 1538.5.

Based upon an affidavit executed by Inspector Hilliard of the Alameda County District Attorney's office, a search warrant was issued on April

12, 1972, for the premises known as 1739 89th Avenue, apartment 4, Oakland. The legal sufficiency of this affidavit is not an issue in this proceeding.

On the evening of April 12, 1972, Officer Romero of the Oakland Police Department, accompanied by Sergeant Goldberg, Officers Neuman, Tyson, Balousek and Sergeant Rothacker, set out to execute the warrant. None of the officers were in uniform. Romero, Neuman, Tyson, and Goldberg proceeded to apartment 4 and stationed themselves on the landing in front of the door to the apartment. Neuman rang the doorbell and a young girl asked "Who is it?" Goldberg then answered, "Marvin, it's Marvin." (Goldberg's given name is Marvin.) The door was then opened 6 to 10 inches. The officers could not see who was opening the door. Goldberg then pushed the door open, showed his badge to the girl and stated that he had a search warrant. He did not ask the girl her name or if she lived in the premises. The police officers then rushed into the apartment.

Officer Romero went into the kitchen and Goldberg went down the hall to the bedrooms. In the kitchen Romero found the mother of petitioner Garcia. Romero explained to her that he was a police officer and that he had authority to search the apartment.

Petitioner Garcia opened a bedroom door just as Goldberg began to enter. Goldberg could see petitioners Garlock and Allen sitting on the bed inside. Goldberg showed his badge, and said, "Police officer. We have a search warrant." Officers Neuman and Tyson followed Goldberg into the bedroom. Shortly thereafter Romero also entered the bedroom. At the foot of the bed Romero found some narcotics and on top of a nightstand he found a pistol containing five rounds of ammunition.

The three petitioners were then placed under arrest and given the warnings prescribed by *Miranda* v. *Arizona,* 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]. The search warrant was served on petitioner Garcia who was then in the dining room area. A man identified as Garcia's stepfather was sitting in a chair in the dining room.

Petitioners were each charged with a violation of Health and Safety Code section 11500.5 (possession of a narcotic for sale) and petitioner Garcia was charged additionally with a violation of Penal Code section 12021 (possession of a concealable firearm by a former felon).[1]

---

[1]Unless otherwise indicated, all statutory references are to the Penal Code.

The issue presented is whether the police officers complied with section 1531 when they entered the apartment and the bedroom. Section 1531 provides: "The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute the warrant, if, after notice of his authority and purpose, he is refused admittance."

Petitioners contend that the officers failed to comply with section 1531. In considering this contention we first observe that an entry effected in violation of the provisions of this statute renders any following search and seizure unreasonable within the meaning of the Fourth Amendment. (*Greven* v. *Superior Court,* 71 Cal.2d 287, 290 [78 Cal.Rptr. 504, 455 P.2d 432]; *People* v. *Rosales,* 68 Cal.2d 299, 304-305 [66 Cal.Rptr. 1, 437 P.2d 489]; *People* v. *Gastelo,* 67 Cal.2d 586, 588-589 [63 Cal.Rptr. 10, 432 P.2d 706].) In *Greven* the court observed that ". . . the rule of announcement requires that minimum compliance with that rule include an effort by the officers prior to entry to communicate to persons inside that they seek to be admitted in order to discharge their duties *as law enforcement officers.*" (At p. 293.)

In *People* v. *Hamilton,* 71 Cal.2d 176 [77 Cal.Rptr. 785, 454 P.2d 681], the factual situation was similar to that in the present case. In *Hamilton* a state narcotic agent and other law enforcement officers went to a single-family residence for the purpose of executing a search warrant. The front door was open and only an unlocked screen door stood between the officers and the interior of the premises. The narcotics agent and other officers went to the screen door and knocked. A small child appeared in the doorway behind the screen door. The agent asked the child whether her mother or "Tony" was at home. The child answered, "Yes," turned, and began walking down a hallway toward the rear of the house. The agent opened the screen door and followed the child down the hallway. As the agent approached the door to a rear bedroom, he encountered the defendant emerging from the bedroom. Inside the bedroom the agent observed seven bindles of heroin. A subsequent search of the premises resulted in the discovery of a quantity of amphetamine tablets.

In holding that the evidence was illegally obtained the Supreme Court in *Hamilton* deemed that the officers' conduct prior to the entry did not constitute compliance with the provisions of section 1531. The court observed that there was no basis in the record from which it could be concluded that compliance with that section was excused because the officers had a reasonable belief that an unnanounced entry was necessary

to prevent destruction of evidence, discourage escape. or insure the officers' safety. (71 Cal.2d at p. 178.)

In the instant case none of the specific factual circumstances excusing compliance with the provisions of section 1531 are present. Here a young girl answered the door and opened it a few inches. The officers were not invited in by the girl, but one of the officers pushed open the door the rest of the way. There is nothing in the record to indicate that the officers were refused admittance so as to justify their pushing open the door. Although Officer Goldberg testified that he showed his badge as he entered and Officer Romero testified that Goldberg held up the search warrant as he entered, there is no indication that either of them announced their authority and purpose. From the testimony of the officers themselves it is apparent that they "rushed" into the apartment and set out in several directions.

Among the policy considerations behind section 1531 are the individual's right of privacy to his house and the avoidance of situations conducive to violence. (*Greven* v. *Superior Court, supra,* 71 Cal.2d 287, 292.) The latter policy consideration has for its objective the safety of officers who might be mistaken upon an unannounced entry into a house for someone with no right to be there. (*Greven* v. *Superior Court, supra.*) Both of these policy considerations are present here. The officers rushed into the apartment without announcing their identity or authority. Present in the apartment were innocent parties who might have acted violently when confronted by persons who were total strangers. Since the officers were not in uniform and had not announced their identity, the occupants of the residence had no reason to know their identity. It should be noted here that the officers' failure to properly announce their identity and purpose before entering was not cured when they later made these announcements. (See *People* v. *Rosales, supra,* 68 Cal.2d 299, 301, 302.)

It is contended by the real party in interest that the officers substantially complied with section 1531. In *Greven* it was observed that in order that there be substantial compliance which falls short of strict literal compliance with section 1531, the officers must, at the very least, *prior to entry* give notice of their presence through knocking or some other means *and* they must identify themselves as police officers. (71 Cal.2d at pp. 291-293.) In the instant case the officers did not identify themselves until *after* they entered the apartment.

No reason excusing their noncompliance with section 1531 having been shown by the officers, their conduct cannot be justified. (See *People* v.

*Gastelo, supra,* 67 Cal.2d 586, 588.) The entry into the apartment was illegal and therefore the subsequent seizure of evidence was illegal.

The peremptory writ of mandate is granted.

Elkington, J., and Weinberger, J.,* concurred.

---

*Assigned by the Chairman of the Judicial Council.