STATE OF NEBRASKA, APPELLEE, V. DAVID L. MOORE, APPELLANT.

535 N.W.2d 417

Filed August 1, 1995.   No. A-94-986.

Frederick D. Franklin, of Lefler & Franklin, for appellant.

Don Stenberg, Attorney General, and Ronald D. Moravec for appellee.

HANNON, MILLER-LERMAN, and INBODY, Judges.

INBODY, Judge.

David L. Moore appeals his conviction of possession of marijuana with the intent to deliver. As a result of information from a cooperating witness, Omaha police officers learned that Moore was acting as a middleman for the sale of marijuana in his home. Omaha police officers found 20 pounds of marijuana after entering Moore's home pursuant to a search warrant. Moore filed a motion to suppress the marijuana and any statements he gave to police upon his arrest for possession with the intent to deliver, on the basis that the search was illegal

because Omaha police officers failed to comply with the "knock and announce" requirements of the search warrant. Moore's motion was denied, and a bench trial was had. Moore was convicted of possession of marijuana with intent to deliver and sentenced to 7 to 10 years' imprisonment.

## STATEMENT OF FACTS

On January 26, 1994, Omaha police officers arrested Ralph Christensen for possession of marijuana with the intent to deliver after conducting a search of his home pursuant to a search warrant. Christensen told the officers that he had received the marijuana from a man named "Dave" who lived near 40th and Hamilton Streets. Christensen stated that "Dave" in turn obtained the marijuana from a man who lived in south Omaha. Christensen agreed to act as a cooperating witness to arrange a purchase of marijuana from "Dave."

On January 27, Omaha police officers followed Christensen, who was wearing a body transmitter, to 3840 Seward Street. The officers recorded a conversation between Christensen and David Moore, in which Christensen told Moore that he was interested in purchasing around 30 pounds of marijuana. Moore agreed to arrange to have his supplier obtain the marijuana and that the price would be $1,150 per pound, which included a commission for Moore of $50 per pound.

On January 29, Christensen called Moore at home, and Moore told him that his supplier had 20 pounds of marijuana available for a total price of $23,000. Christensen was told to come to Moore's house at 12:30 p.m. on January 30 to purchase the marijuana. Omaha police officers obtained a "knock and announce" search warrant the morning of January 30. The affidavit to obtain the search warrant appears to be a standard form. On page four of the affidavit, the form states, "A Warrant authorizing a night-time search is requested because . . ." and, "That a no-knock search warrant is requested because . . . ." Both statements are followed by the entry "not requested" on the affidavit. The warrant authorized police to search Moore's two-story home and seize "[m]arijuana . . . . All records and monies used to conduct an illegal marijuana selling operation. Venue identifying the residents of 3840 Seward

Street, Omaha, Douglas County, Nebraska."

Later that morning, Christensen was equipped with a body transmitter and given $23,000 to purchase the marijuana. Sgt. Mark Langan and Omaha police officer Mark Lang followed Christensen to Moore's house, while other officers monitored and recorded Christensen's conversations. Christensen entered Moore's home and held a conversation with him for about 14 minutes until Moore's supplier arrived at the home. After inspecting the marijuana, Christensen then used the code word "junior" to indicate to the police monitoring the conversation that the marijuana was currently in Moore's home.

After hearing the code word, approximately eight Omaha police officers, including Sergeant Langan, went to the porch of the Moore house. In his supplementary report, Sergeant Langan stated that at 12:35 p.m., he

> knocked on the front door very loudly and yelled in an authoritative tone, "Police officers, search warrant, we demand entry immediately". After a wait of several seconds, there was still no answer at the door. Sergeant Langan again knocked very loudly and stated in a loud, authoritative voice, "Police officer, search warrant, we demand entry immediately". After several seconds there was still no answer at the door. Judging by the size of the house, it was evident that during the time that Sergeant Langan had first knocked until the last statement uttered by Sergeant Langan that there was sufficient time for a reasonable person inside of the address to answer the door.

As a result, Sergeant Langan authorized Officer Lang to use a battering ram on the front door to gain entry into Moore's house.

At the hearing on the motion to suppress, Officer Lang testified that Sergeant Langan twice knocked on the door loudly and also verbally commanded the persons inside Moore's house to open the door. Officer Lang stated that the verbal commands were "probably louder" than the knocks on the door. Officer Lang stated at the hearing that because the police were attempting to seize 20 pounds of marijuana, they did not request a no-knock warrant because "[w]e didn't believe that the individuals inside were going to be able to destroy that

evidence . . . . We didn't believe the individuals were going to be able to eat that or flush it down the toilet or down the sink, so we used the knock clause."

At the hearing on Moore's motion to suppress, Moore offered the tape recording made by Omaha police from the body transmitter on Christensen. While the police officers who were on the porch did not continue to listen to the transmission from Christensen, the transmission continued to be taped. On the tape, one can hear the voices of Christensen, Moore, and Moore's supplier in addition to a television or radio broadcast in the background. The tape recording reveals two loud knocks approximately 7 seconds apart. The tape recording does not reveal an audible announcement accompanying the knocks. After the second knock, approximately 7 seconds passed before the police officers used the battering ram to gain entry. A total of 15 seconds elapsed between the first knock and the use of the battering ram.

Upon entering Moore's home, Officer Lang found against a wall in the dining room a cardboard box which contained 20 Ziploc bags, each containing approximately 1 pound of marijuana. Moore was arrested and gave a statement to the police officers.

Moore filed a motion to suppress the marijuana and any statements he gave to police, alleging that the police officers' method of serving the warrant did not comply with the "knock and announce" requirements under Neb. Rev. Stat. § 29-814.01 (Reissue 1989). The district court denied Moore's motion to suppress, finding:

Defendant's argument that the "knock" required warrant was not sufficient and adequately complied with, fails as a matter of fact and a matter of law. The Court finds that the police officers knocked twice before entry was made. Speculation as to how long police officers must wait before making entry after knocking should be subject to a reasonableness rule under all circumstances.

A bench trial was held, and stipulated evidence was offered at the trial, subject to Moore's renewed motion to suppress. The motion to suppress was again denied, and Moore was found guilty of possession of marijuana with intent to deliver. Moore appeals.

## ASSIGNMENTS OF ERROR

Moore alleges the district court erred when it denied his motion to suppress because (1) the marijuana was seized as a result of a search after police failed to knock and announce their identity and purpose and wait a reasonable amount of time and (2) there was no evidence of exigent circumstances to support immediate, unannounced entry.

## STANDARD OF REVIEW

A trial court's ruling on a motion to suppress is to be upheld on appeal unless its findings of fact are clearly erroneous. *State v. Grimes*, 246 Neb. 473, 519 N.W.2d 507 (1994). In determining whether a trial court's findings on a motion to suppress are clearly erroneous, an appellate court does not reweigh the evidence or resolve conflicts in the evidence, but, rather, recognizes the trial court as the finder of fact and takes into consideration that it observed the witnesses. *Id.*

## ANALYSIS

Moore argues that because police officers failed to knock and announce their identity and purpose before making a forcible entry and because there were no exigent circumstances which would exempt the officer from complying with the requirements of knocking and announcing when serving a search warrant, the evidence against him should have been suppressed.

Under Neb. Rev. Stat. § 29-411 (Reissue 1989), a police officer may break into a house when serving a search warrant if "after notice of his office and purpose, he is refused admittance." Such a search warrant has been labeled a "knock and announce" warrant. So-called "no-knock" warrants are also authorized under the statute "if the judge or magistrate issuing a search warrant has inserted a direction therein that the officer executing it shall not be required to give such notice." The statute allows a judge or magistrate to issue such a warrant only upon proof under oath that "the property sought may be easily or quickly destroyed or disposed of, or that danger to the life or limb of the officer or another may result, if such notice be given." The statute codifies the common-law requirement of

knocking and announcing when serving a search warrant prior to breaking into a person's dwelling. See, *Wilson v. Arkansas,* _____ U.S. _____, 115 S. Ct. 1914, 131 L. Ed. 2d 976 (1995); *Miller v. United States,* 357 U.S. 301, 78 S. Ct. 1190, 2 L. Ed. 2d 1332 (1958).

██ The U.S. Supreme Court has recently ruled that the Fourth Amendment requires that officers knock and announce their purpose, and be denied admittance, prior to breaking into a dwelling, absent certain circumstances. *Wilson v. Arkansas, supra.* In *Wilson,* the Court found:

> Given the longstanding common-law endorsement of the practice of announcement, we have little doubt that the Framers of the Fourth Amendment thought that the method of an officer's entry into a dwelling was among the factors to be considered in assessing the reasonableness of a search or seizure. . . . [W]e hold that in some circumstances an officer's unannounced entry into a home might be unreasonable under the Fourth Amendment.

115 S. Ct. at 1918.

*Wilson* effectively overrules *State v. Vrtiska,* 225 Neb. 454, 406 N.W.2d 114 (1987), in which the Nebraska Supreme Court held that there was no Fourth Amendment requirement to knock and announce prior to entry when serving a search warrant.

The *Wilson* Court recognized, however, that not every entry into a dwelling must be preceded by an announcement. Instead, the Court recognized that there are certain circumstances which excuse announcement. The Court noted that lower courts have allowed no announcement when there may be a threat of physical violence to the officers if they announced their presence, or when a prisoner has escaped from an arresting officer to retreat to his or her dwelling. See, e.g., *In re Lavoyne M.,* 221 Cal. App. 3d 154, 270 Cal. Rptr. 394 (1990). Finally, the Court found that "courts have indicated that unannounced entry may be justified where police officers have reason to believe that evidence would likely be destroyed if advance notice were given." 115 S. Ct. at 1919 (citing *Ker v. California,* 374 U.S. 23, 83 S. Ct. 1623, 10 L. Ed. 2d 726 (1963)). See, e.g., *Commonwealth v. Morgan,* 517 Pa. 93, 534 A.2d 1054 (1987).

The Court further stated that it declined to create a "comprehensive catalog" of the relevant countervailing factors which would override the requirement for an announcement, leaving to the lower courts the determination of when unannounced entry is reasonable.

Absent exigent circumstances, the U.S. Supreme Court has held that a mere pro forma compliance with knock and announce requirements under 18 U.S.C. § 3109, which is the federal codification of the common-law knock and announce requirement, is not enough, unless the police officers' actions were sufficient to give actual notice. *Miller v. United States*, 357 U.S. 301, 78 S. Ct. 1190, 2 L. Ed. 2d 1332 (1958). In *Miller*, the evidence showed that police knocked on the defendant's front door and, when asked who was there, said in a low voice "police." The police, however, did not expressly demand admission or state their purpose. The *Miller* Court found that the defendant did not receive the required notice of authority and purpose and that therefore the evidence against him should have been suppressed.

> However much in a particular case insistence upon such rules may appear as a technicality that inures to the benefit of a guilty person, the history of the criminal law proves that tolerance of short-cut methods in law enforcement impairs its enduring effectiveness. . . . Every householder, the good and the bad, the guilty and the innocent, is entitled to the protection designed to secure the common interest against unlawful invasion of the house.

357 U.S. at 313. See, also, *Rivera v. U.S.*, 928 F.2d 592 (2d Cir. 1991) (the Fourth Amendment requires that police officers make a reasonable effort to provide actual notice, not mere pro forma notice of their identity and purpose).

In the case at hand, the question before us is whether the district court was clearly erroneous when it found that the officers' actions of knocking twice and entering within 15 seconds constituted a reasonable search, where the court made no finding as to whether or not an announcement had been made, and if so, whether it was adequate, coupled with the fact that the tape does not reveal an announcement following the knocks, and where there was no showing of exigent

circumstances. In *U.S. v. Mendonsa*, 989 F.2d 366, 368 (9th Cir. 1993), police officers executing a search warrant knocked; announced loudly, " 'Police! Open up, we have a search warrant' "; and waited approximately 3 to 5 seconds before "smashing" through the defendant's front door. The search warrant was issued pursuant to 18 U.S.C. § 3109 (1988), which provides that a police officer may break into someone's dwelling when executing a warrant if "after notice of his authority and purpose, he is refused admittance." The *Mendonsa* court found:

> A refusal to reply to an officer's order to "open up" can be implied from silence. [Citation omitted.] Exigent circumstances may excuse failure to wait for the occupant to refuse entry, but absent exigency, there must be explicit refusal or lapse of a significant amount of time before officers may forcibly enter the premises. [Citation omitted.]
>
> What constitutes a "significant amount of time" between announcement and entry depends upon the circumstances of each case. [Citation omitted.] If officers have knocked and announced properly, mild exigency justifies simultaneous entry if it occurs without destruction of property. [Citation omitted.]
>
> When physical destruction of property is necessary to gain entry, more specific inferences of exigency are required. [Citation omitted.] Forced entry within three to five seconds is permissible when specific inferences are present. [Citations omitted.] An unjustified, yet sincere, belief in exigent circumstances does not justify non-compliance with section 3109.

989 F.2d at 370.

The *Mendonsa* court found that the evidence did not establish specific inferences of exigency in the case, as the evidence showed that at the time of service of the warrant, all the occupants of the house were sitting in the living room, playing soft music. The court noted that "[t]he Government has pointed to no particular type of noise, which would indicate that the occupants were rushing to arm themselves or to destroy evidence." 989 F.2d at 371.

Like the court in *Mendonsa*, the court in *People v. Jennings*, 204 Ill. App. 3d 1075, 562 N.E.2d 1239 (1990), found that the measure of what was a reasonable time to wait, given that police had properly knocked and announced, was made by examining the exigent circumstances. "The presence of exigent circumstances is as important and relevant to the question of the amount of time an officer ought to wait prior to entering forcibly as it is to the question of whether he needs to even announce his authority and purpose prior to entry." *Id.* at 1078, 562 N.E.2d at 1240.

An example of a case in which there was a lack of exigent circumstances is *U.S. v. Lucht*, 18 F.3d 541 (8th Cir. 1994), in which the court overturned the district court's order denying the motion to suppress made by one of the defendants. The evidence showed that members of the Omaha Police Division's emergency response unit (ERU) knocked on the defendant's door and yelled "police officers." After hearing no noise or movement and after 3 to 5 seconds, the police entered the defendant's house using a battering ram. The district court found exigent circumstances justifying the quick entry on the basis that the defendant's house was small; it did not have curtains covering the windows; the view from the house to the street was unencumbered; there was probable cause to believe drugs, cash, and weapons were present; and all the inhabitants of the house were awake. The *Lucht* court stated:

> The proper inquiry is whether, given the facts and circumstances known to [the police officer leading the search], he reasonably decided there was an urgent need to force entry. . . .
>
> . . . Here, ERU was not in a dangerous tactical situation. They did not hear or see anything to indicate they were in danger or that evidence was being destroyed. [The police officer] knew there was a likelihood that there were weapons in the house, but he had no information indicating that [the defendant] Kress was considered dangerous or violent or might be inclined to use the weapons against them. . . . [The police officer] also knew that the search was for a large amount of methamphetamine, but he testified that this did not alter how he entered

the house. There was no evidence that Kress could have easily disposed of a large quantity of drugs or that, like [his fellow defendant], he had a special hiding place for them.

*Id*. at 551.

In contrast, two of Kress' fellow defendants were subjected to forced entry within 5 to 10 seconds and 6 to 8 seconds, but in each case, exigent circumstances existed to excuse noncompliance with the statute. See, also, *U.S. v. Marts*, 986 F.2d 1216 (8th Cir. 1993) (the lapse of 5 seconds without a showing of exigent circumstances is not a refusal of admittance); *People v Asher*, 203 Mich. App. 621, 513 N.W.2d 144 (1994) (lapse of 5 seconds between knock and announce and entry did not comply with knock and announce requirements because there was no evidence that drugs were being destroyed or that defendants possessed weapons).

We find the *Mendonsa* and *Jennings* courts' reasoning to be persuasive, given the recent U.S. Supreme Court ruling in *Wilson v. Arkansas*, _____ U.S. _____, 115 S. Ct. 1914, 131 L. Ed. 2d 976 (1995), that the knock and announce requirement under the Fourth Amendment be subjected to a reasonableness test. The determination of whether police officers made more than a pro forma attempt to comply with the knock and announce requirements, which absent exigent circumstances entails allowing the defendant to respond to the knock and announcement, should be made by determining whether there were exigent circumstances.

In the case at hand, we find no evidence in the record of any exigent circumstances which would excuse following the knock and announce requirements. Officer Lang testified at the hearing on the motion to suppress that the police made a conscious decision *not* to ask for a no-knock warrant, as they believed it was unnecessary. Officer Lang stated that given the amount of marijuana to be seized, police believed it would be difficult to destroy it quickly. There is no evidence that Moore was armed or suspected to be dangerous, which would cause police to be in fear of their lives or of Christensen's life. There is no evidence that police heard movement within the house, suggesting an attempt to escape or not answer the door.

Therefore, we find that in the absence of exigent circumstances, there is no evidence in the record to support a finding that there was an implied or constructive refusal to admit the police officers within 15 seconds of the first knock.

■ Unreasonable searches and seizures are proscribed by the 4th Amendment to the U.S. Constitution, and this prohibition is enforceable against the states through the 14th Amendment. *Ker v. California*, 374 U.S. 23, 83 S. Ct. 1623, 10 L. Ed. 2d 726 (1963); *Mapp v. Ohio*, 367 U.S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961). Evidence obtained as the fruit of an unconstitutional search and seizure is inadmissible in a state prosecution. *Wong Sun v. United States*, 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963); *State v. Hicks*, 241 Neb. 357, 488 N.W.2d 359 (1992). We find that the district court was clearly erroneous when it denied Moore's motion to suppress.

## CONCLUSION

We find that there is no evidence in the record to support a finding that there were exigent circumstances which would excuse compliance with the knock and announce requirements under the Fourth Amendment. We therefore reverse.

REVERSED.