STATE OF NEBRASKA, APPELLEE, V.
TERRY W. KELLEY, APPELLANT.
658 N.W.2d 279

Filed March 21, 2003. No. S-02-742.

W. Randall Paragas, of Paragas Law Offices, for appellant.

Don Stenberg, Attorney General, and George R. Love for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

## NATURE OF CASE

Terry W. Kelley, the appellant, was convicted by the district court of possession of methamphetamine with intent to deliver and was sentenced to imprisonment for a term of 6 to 12 years. The issue presented in this appeal is whether the district court

erred in denying Kelley's motion to suppress evidence obtained in a search of his home, based on his claim that the police failed to properly knock and announce their presence prior to entering the dwelling.

## BACKGROUND

On January 16, 2001, officers of the Omaha Police Department and deputies of the Sarpy County Sheriff's Department obtained a search warrant for Kelley's residence in Sarpy County. The affidavit supporting issuance of the warrant averred facts generally indicating that the residence was being used for the sale and consumption of methamphetamine. The validity of the affidavit and warrant is not at issue in this appeal. The warrant specified that service should occur during the daytime hours between 7 a.m. and 8 p.m. and that the police were to knock and announce their presence. The police did not seek issuance of a no-knock search warrant. However, an Omaha police officer testified at the hearing on Kelley's motion to suppress that methamphetamine in ounce or even multi-ounce weights can be easily destroyed by flushing it down a toilet or sink.

The warrant was executed on January 17, 2001, at about 6:55 p.m., by a team of approximately 15 officers and deputies. Initial entry into the dwelling was made by three deputies from the Sarpy County Sheriff's Department: John Sorensen, Rick Wheeler, and Brian Fjelstad. The three approached the door, wearing helmets and uniforms that read " 'Sheriff' " in bold letters. Wheeler knocked. Shortly thereafter, Wheeler opened the door and Fjelstad led the deputies into the dwelling.

The testimony given at the hearing on Kelley's motion to suppress regarding execution of the warrant generally described a similar sequence of events, but differed somewhat on some of the details. Sorensen testified as follows:

> I was the third person in our stack as we walked up to that front door. As we go to the door, one officer has a shield. He steps back. Deputy Wheeler knocks on the door.
>
> As soon as Deputy Wheeler knocked or about the same time, I saw a female look out the front window which is right next to that front door and looked very surprised and took off, appeared to be running.

At that time I yelled "compromise" which means somebody has seen us. Deputy Wheeler continued knocking three to five seconds, kept knocking; heard a loud commotion inside the house. And with that, we went in and entered the residence.

Sorensen testified that Wheeler knocked loudly on the door and yelled " 'sheriff's office.' " Sorensen later testified that in his opinion, approximately 5 to 10 seconds elapsed between the time Sorensen yelled "compromise" and the time they entered the dwelling. Fjelstad also testified that the time from the initial knock to entry into the dwelling was about 5 to 15 seconds.

Wheeler testified that he had knocked loudly, calling out his "standard words," " '[S]heriff's office. We demand entry. We have a search warrant.' " According to Wheeler, 5 seconds later, Sorensen said they had been compromised. Wheeler testified that he continued knocking, waiting for the individual who had appeared in the window to come to the door. Wheeler said that the window through which the woman had been seen was right next to the door, but no one came to the door or spoke to the deputies. Unlike Sorensen, Wheeler did not hear people inside the house. Wheeler testified that about 5 seconds after they had been compromised, Wheeler checked the door handle and found that the door was unlocked, so he opened the door and the deputies entered.

Kelley's wife testified that she had been sitting on the couch when she heard her dogs make a noise. She testified that she looked out the window, heard two knocks on the door, and then the deputies came through the door. Kelley's wife testified that the time that elapsed between her looking out the window and the deputies' entry into the dwelling was less than 5 seconds, "like a second." Kelley's wife did not hear the deputies yell "police" or any words to that effect.

Kelley testified that he had been upstairs at the time. Kelley testified:

I'd walked out of the bathroom. And just instantly, you know, my wife said, "Terry," and there was a bam, bam, very abrupt, two knocks on the door, bam, bam, and the door flew open and "get down on the ground," you know. "Sheriff's Department," blah, blah, blah, after they entered the house.

Kelley testified that no more than 5 seconds elapsed—that the door opened on the second knock. Kelley stated that neither he nor his wife had a chance to get to the door before it was opened. Both Kelley and his wife testified that the deputies forced their way through the front door, damaging the door in the process.

Once inside, officers discovered drug paraphernalia and a substance later determined to be methamphetamine. Kelley was arrested. He was charged by information in the district court with possession of a controlled substance and possession of a controlled substance with intent to deliver. Kelley filed a pretrial motion to suppress evidence obtained during the search. The district court denied Kelley's motion, making detailed findings as follows:

> The primary issue is whether the evidence showed sufficient circumstances and necessity for the officers to enter the premises without further knocking or announcing when considering officer safety and prevention of the destruction of evidence. This Court accepts Deputy Wheeler's testimony as the more credible, that being that there was several seconds of knocking and announcing followed by Deputy Sorenson's [sic] warning of compromise, and then continued knocking and announcing for a time sufficient to allow an occupant to get to the door and open it prior to the entry of the team. Even though Deputy Wheeler testified the total time he spent knocking would not have been more than 10 to 15 seconds, this seems the more credible version of events. I also find it more credible that the door was opened without the use of a battering ram and that there was no damage to the door.
>
> . . . .
>
> [I]n the case at bar, the credible evidence supports a finding that an announcement was made, and additionally, that an exigent circumstance existed to permit entry into the home. That exigency was the presence of defendant's wife, who, by her own admission, looked out the window near the front door and saw the deputies outside. Once the officers were detected, considering the officers were executing a warrant in search of controlled substances which could have been destroyed, it was reasonable for the officers to

only knock and announce for a few more seconds before gaining entry to the residence. The more credible testimony, and that which is accepted by this Court, supports the conclusion that the execution of the "knock and announce" warrant was reasonable under the Fourth Amendment . . . .

After the motion to suppress was denied, Kelley waived a jury trial and trial was had to the court on stipulated facts subject to Kelley's motion to suppress. Kelley was convicted of possession of a controlled substance with intent to deliver and, on July 2, 2001, was sentenced to 6 to 12 years' imprisonment. Kelley did not appeal initially, but later filed a motion for postconviction relief based on his attorney's failure to perfect an appeal; Kelley was awarded a new direct appeal, which he timely filed. See, generally, *State v. McCracken*, 260 Neb. 234, 615 N.W.2d 902 (2000), *abrogated on other grounds, State v. Thomas*, 262 Neb. 985, 637 N.W.2d 632 (2002). We moved Kelley's new direct appeal to our docket pursuant to our authority to regulate the caseloads of this court and the Nebraska Court of Appeals. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

## ASSIGNMENTS OF ERROR

Kelley assigns that the district court erred in finding that the deputies properly executed their " 'knock and announce' " search warrant and in overruling his motion to suppress evidence. Kelley also claims that he is entitled to "a re-hearing on his Motion to Suppress" due to the ineffective assistance of trial counsel.

## STANDARD OF REVIEW

In reviewing a trial court's ruling on a motion to suppress evidence, ultimate determinations of reasonable suspicion are reviewed de novo by an appellate court, while findings of historical fact are reviewed for clear error, giving due weight to the inferences drawn from those facts by the trial judge. See, *Ornelas v. United States*, 517 U.S. 690, 116 S. Ct. 1657, 134 L. Ed. 2d 911 (1996); *State v. Keup, ante* p. 96, 655 N.W.2d 25 (2003); *State v. McCleery*, 251 Neb. 940, 560 N.W.2d 789 (1997).

## ANALYSIS

Kelley's first argument is that the evidence against him should have been suppressed as the fruit of an illegal search. In

Nebraska, freedom from unreasonable searches and seizures is guaranteed by U.S. Const. amend. IV and Neb. Const. art. I, § 7. *State v. Ortiz*, 257 Neb. 784, 600 N.W.2d 805 (1999). Evidence obtained as the fruit of an illegal search or seizure, in violation of the Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution, is inadmissible in a state prosecution and must be excluded. *State v. Cuny*, 257 Neb. 168, 595 N.W.2d 899 (1999). Searches conducted pursuant to a warrant supported by probable cause are generally considered to be reasonable; consequently, if the police act pursuant to a search warrant, the defendant bears the burden of proof that the search or seizure is unreasonable. *State v. Swift*, 251 Neb. 204, 556 N.W.2d 243 (1996).

Neb. Rev. Stat. § 29-411 (Reissue 1995) provides, in relevant part:

> In executing a warrant for the arrest of a person charged with an offense, or a search warrant, or when authorized to make an arrest for a felony without a warrant, the officer may break open any outer or inner door or window of a dwelling house or other building, if, after notice of his office and purpose, he is refused admittance . . . .

This statute codifies the common-law requirement of knocking and announcing when serving a search warrant prior to breaking into a person's dwelling. *State v. Moore*, 3 Neb. App. 909, 535 N.W.2d 417 (1995), citing *Wilson v. Arkansas*, 514 U.S. 927, 115 S. Ct. 1914, 131 L. Ed. 2d 976 (1995). In addition, the U.S. Supreme Court held in *Wilson, supra*, that the Fourth Amendment requires that officers knock and announce their purpose and be denied admittance prior to breaking into a dwelling, absent certain circumstances. The common-law knock-and-announce principle forms a part of a Fourth Amendment inquiry into reasonableness, and an officer's unannounced entry into a home might, in some circumstances, be unreasonable under the Fourth Amendment. *Wilson, supra*. But not every entry must be preceded by an announcement. *Id.* The Fourth Amendment's flexible requirement of reasonableness should not be read to mandate a rigid rule of announcement that ignores countervailing law enforcement interests. *Wilson, supra*. The *Wilson* Court declined, however,

to "attempt a comprehensive catalog of the relevant counter-vailing factors." 514 U.S. at 936.

■ The U.S. Supreme Court revisited the *Wilson* knock-and-announce principle in *Richards v. Wisconsin*, 520 U.S. 385, 117 S. Ct. 1416, 137 L. Ed. 2d 615 (1997). In that case, the Wisconsin Supreme Court had held that *Wilson, supra*, did not preclude its pre-*Wilson* rule that because of the special circumstances of the drug culture, police officers are *never* required to knock when executing a search warrant in a felony drug investigation. The U.S. Supreme Court, relying on *Wilson*, rejected this "blanket exception" to the knock-and-announce principle. See *Richards, supra*. The Court held:

> In order to justify a "no-knock" entry, the police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence. This standard—as opposed to a probable-cause requirement—strikes the appropriate balance between the legitimate law enforcement concerns at issue in the execution of search warrants and the individual privacy interests affected by no-knock entries.

520 U.S. at 394. The Court determined, however, that under the circumstances presented in the case, the entry by officers into the premises in question was justified. Those circumstances merit a more detailed examination, because of the evident similarities between them and the facts of the instant case.

> On December 31, 1991, police officers in Madison, Wisconsin, obtained a warrant to search Steiney Richards' motel room for drugs and related paraphernalia. The search warrant was the culmination of an investigation that had uncovered substantial evidence that Richards was one of several individuals dealing drugs out of hotel rooms in Madison. The police requested a warrant that would have given advance authorization for a "no-knock" entry into the motel room, but the Magistrate explicitly deleted those portions of the warrant. . . .
>
> The officers arrived at the motel room at 3:40 a.m. Officer Pharo, dressed as a maintenance man, led the team.

With him were several plainclothes officers and at least one man in uniform. Officer Pharo knocked on Richards' door and, responding to the query from inside the room, stated that he was a maintenance man. With the chain still on the door, Richards cracked it open. Although there is some dispute as to what occurred next, Richards acknowledges that when he opened the door he saw the man in uniform standing behind Officer Pharo. . . . He quickly slammed the door closed and, after waiting two or three seconds, the officers began kicking and ramming the door to gain entry to the locked room. At trial, the officers testified that they identified themselves as police while they were kicking the door in. . . . When they finally did break into the room, the officers caught Richards trying to escape through the window. They also found cash and cocaine hidden in plastic bags above the bathroom ceiling tiles.

*Richards v. Wisconsin*, 520 U.S. 385, 388-89, 117 S. Ct. 1416, 137 L. Ed. 2d 615 (1997). The Court determined:

Although we reject the Wisconsin court's blanket exception to the knock-and-announce requirement, we conclude that the officers' no-knock entry into Richards' motel room did not violate the Fourth Amendment. We agree . . . that the circumstances in this case show that the officers had a reasonable suspicion that Richards might destroy evidence if given further opportunity to do so.

The judge who heard testimony at Richards' suppression hearing concluded that it was reasonable for the officers executing the warrant to believe that Richards knew, after opening the door to his motel room the first time, that the men seeking entry to his room were the police. . . . Once the officers reasonably believed that Richards knew who they were, the court concluded, it was reasonable for them to force entry immediately given the disposable nature of the drugs. . . .

. . . At the time the officers obtained the warrant, they did not have evidence sufficient, in the judgment of the Magistrate, to justify a no-knock warrant. Of course, the Magistrate could not have anticipated in every particular the circumstances that would confront the officers when

they arrived at Richards' motel room. These actual circumstances—petitioner's apparent recognition of the officers combined with the easily disposable nature of the drugs—justified the officers' ultimate decision to enter without first announcing their presence and authority.

520 U.S. at 395-96.

■ Also pertinent to our analysis is the principle that following a knock and announcement, the requirement that officers executing a search warrant be "refused admittance," within the meaning of statutory and constitutional requirements, is not restricted to an affirmative refusal, but encompasses circumstances that constitute constructive or reasonably inferred refusal. See, e.g., *U.S. v. Bonner*, 874 F.2d 822 (D.C. Cir. 1989). See, also, *State v. Moore*, 3 Neb. App. 909, 535 N.W.2d 417 (1995). In making such judgments, courts employ a highly contextual analysis, examining all the circumstances of the case, to determine whether the record establishes the existence of a constructive refusal. *Bonner, supra.*

Based on the principle of constructive refusal, courts have determined, under circumstances very comparable to those of the instant case, that officers acted reasonably in determining that they had been denied admittance to premises to be searched. For instance, in *Bonner, supra,* police officers knocked on the front door of an apartment and announced their identity and presence to those they knew to be within. After approximately 11 to 12 seconds, the officers heard footsteps running from the door, and some " 'faint thumping or bumping inside the premises,' " and they forced the door open. *Id.* at 823.

The D.C. Circuit determined that the record "strongly support[ed]" the conclusion that the officers had been refused admittance, and for the reasonableness of their actions. *Id.* at 824. First, the court noted that drugs and evidence of drug trafficking are peculiarly susceptible to ready destruction. Second, the court noted that when police officers are entering a premises investigating drug activity and have announced their presence and identity, they face a "danger-fraught situation" in which they may reasonably infer refusal more readily than under other circumstances. *Id.* Third, the court noted that while the warrant issued had not been a no-knock warrant, the warrant process had tested

and certified the information supporting the search. Fourth, the court stated that in view of the officers' knowledge that persons were present inside the small apartment, and the execution of the warrant during the early evening hours, the lack of response within approximately 10 seconds following the first announcement of purpose was particularly probative of refusal. Fifth, the officers heard sounds from inside the premises consistent with both refusal of admittance and destruction of the object of the search. "When conducting a search for evidence that is readily destroyed, officers may resolve the ambiguity of a noise from within the place to be searched in a manner consistent with executing the warrant safely and successfully." *Id.* at 825. Finally, the court stated that the delay of approximately 11 to 12 seconds from the start of the officers' first announcement, with no indication that they would be admitted, supported the conclusion that they had been refused admittance. *Id.*

In light of the foregoing analysis, the court determined that the delay before entering the premises supported a reasonable conclusion that the officers had been refused admittance. See *id.* See, also, e.g., *United States v. Chambers*, 382 F.2d 910, 914 (6th Cir. 1967) (refusal of admittance after "brief interval of time" inferred from person coming to door and pulling back shade, but retreating from door); *State v. Long*, 163 Wis. 2d 261, 471 N.W.2d 248 (Wis. App. 1991) (delay of 7 to 10 seconds at outer door, and another 5 to 7 seconds at inner door, reasonable where officer spoke to occupant through window); *People v. Hill*, 3 Cal. App. 3d 294, 83 Cal. Rptr. 305 (1970) (breaking of door reasonable when occupant pulled curtains apart, then disappeared from view, followed by sound of quick movement inside apartment).

Similarly, we conclude that the record in the instant case supports a reasonable suspicion that it would have been futile, and that it would have inhibited the effective investigation of the crime, for the deputies to continue to knock and announce their identity and purpose prior to their entry into Kelley's residence. See *Richards v. Wisconsin*, 520 U.S. 385, 117 S. Ct. 1416, 137 L. Ed. 2d 615 (1997). Reasonable suspicion entails some minimal level of objective justification for detention, something more than an inchoate and unparticularized suspicion or "hunch," but less than the level of suspicion required for probable cause. *State v.*

*Anderson*, 258 Neb. 627, 605 N.W.2d 124 (2000). See *United States v. Arvizu*, 534 U.S. 266, 122 S. Ct. 744, 151 L. Ed. 2d 740 (2002). It is not the officer's inchoate or unparticularized suspicion or hunch that will be given due weight, but the specific reasonable inferences which the officer is entitled to draw from the facts in light of the officer's experience. *State v. McCleery*, 251 Neb. 940, 560 N.W.2d 789 (1997). See *Arvizu, supra.* Whether a police officer has a reasonable suspicion based upon sufficient, articulable facts requires taking into account the totality of the circumstances. *Anderson, supra.* The "totality of the circumstances" principle governs the existence vel non of "reasonable suspicion." *Arvizu, supra.*

The district court in this case made clear and detailed findings of historical fact that are supported by the record and are not clearly erroneous. The record supports the district court's findings that 10 to 15 seconds elapsed from the initial announcement to the forced entry and that during that time, the deputies saw Kelley's wife, in close proximity to the door, observe their presence. The record also reveals that a "commotion" was heard inside the house and that the evidence being sought was of a kind that is easily destroyed. As in *Richards, supra*, once the deputies reasonably believed that Kelley's wife knew who they were, and did not respond to the knock at the door, it was reasonable for them to force entry shortly thereafter, given the disposable nature of the drugs. The "apparent recognition of the officers combined with the easily disposable nature of the drugs—justified the officers' ultimate decision to enter" without continuing to announce their presence and authority. See 520 U.S. at 396.

There is no dispute that Kelley's wife was seen looking out a window directly adjacent to the door on which the deputies were knocking. The district court credited Wheeler's testimony that the deputies gave Kelley's wife enough time to proceed directly to the door and open it, or to communicate with them. Instead, Sorensen testified that Kelley's wife "looked very excited and left," followed by the "commotion" inside the house. Given these circumstances, as in *U.S. v. Bonner*, 874 F.2d 822 (D.C. Cir. 1989), it was reasonable for the deputies to conclude that they had constructively been refused admittance to the premises.

Taking into account the totality of the circumstances, the record contains sufficient, articulable facts from which the deputies could reasonably infer that it would have been futile, and that it would inhibit the effective investigation of the crime, to continue to knock and announce their identity and purpose for a substantial period of time given that Kelley's wife looked out the window and proceeded away from the directly adjacent door rather than responding to the deputies' knocking. Kelley's assignment of error regarding his motion to suppress is without merit.

In arguing to the contrary, Kelley, in his appellant's brief, relies extensively on *U.S. v. Mendonsa*, 989 F.2d 366 (9th Cir. 1993), for the proposition that a heightened standard is applied to exigent circumstances when property damage results from entry into the premises. However, Kelley's brief fails to mention that the Ninth Circuit's property-based exigency rule was squarely rejected by the U.S. Supreme Court in *United States v. Ramirez*, 523 U.S. 65, 118 S. Ct. 992, 140 L. Ed. 2d 191 (1998), or that this rejection was recognized by the Ninth Circuit in *LaLonde v. County of Riverside*, 204 F.3d 947 (9th Cir. 2000). Under *Richards v. Wisconsin*, 520 U.S. 385, 117 S. Ct. 1416, 137 L. Ed. 2d 615 (1997), forced entry in the execution of a search warrant is justified if police have a reasonable suspicion that knocking and announcing, or continuing to knock and announce, would be dangerous, futile, or destructive to the purposes of the investigation. Whether such a reasonable suspicion exists depends in no way on whether police must destroy property in order to enter. *Ramirez, supra.* In short, that aspect of *Mendonsa* was overruled by the U.S. Supreme Court in *Ramirez.* We also note that the rule set forth in *Mendonsa* was referred to by the Court of Appeals, prior to the *Ramirez* decision, in *State v. Moore*, 3 Neb. App. 909, 535 N.W.2d 417 (1995). *Moore* is disapproved to that limited extent.

Finally, Kelley claims that he is entitled to a rehearing on his motion to suppress due to the ineffective assistance of trial counsel. Kelley complains of deficiencies in his counsel's cross-examination of certain witnesses, his counsel's failure to object to certain fruits of the purportedly illegal search, and his counsel's failure to object to certain evidence that Kelley claims was irrelevant.

 A claim of ineffective assistance of counsel need not necessarily be dismissed merely because it is made on direct appeal; the determining factor is whether the record is sufficient to adequately review the question. *State v. Long*, 264 Neb. 85, 645 N.W.2d 553 (2002). Some types of attack upon effectiveness of counsel cannot be reached upon a direct appeal because the evidence which may bear upon such a determination is not shown in the trial record. *State v. Lindsay*, 246 Neb. 101, 517 N.W.2d 102 (1994).

 When reviewing a claim of ineffective assistance of counsel, an appellate court will not second-guess reasonable strategic decisions by counsel. *State v. Buckman*, 259 Neb. 924, 613 N.W.2d 463 (2000). An appellate court gives due deference to defense counsel's discretion in formulating trial tactics. See *State v. Williams*, 259 Neb. 234, 609 N.W.2d 313 (2000). We conclude, in the instant case, that absent an evidentiary hearing regarding trial strategy, the record before us is insufficient to determine whether counsel's performance was deficient or was the result of reasonable trial strategy. For that reason, we decline to address Kelley's ineffective assistance of counsel claim.

## CONCLUSION

Considering the totality of the circumstances and giving due weight to the district court's findings of historical fact, we conclude that the record contains sufficient, articulable facts from which the deputies could reasonably infer that it was futile and that it would have inhibited the effective investigation of the crime to continue to knock and announce their presence prior to entering Kelley's dwelling. The record is not sufficient for us to evaluate Kelley's claim of ineffective assistance of counsel. Therefore, the judgment of the district court is affirmed.

AFFIRMED.