IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

STATE V. VALENTINE

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

BRANDON W. VALENTINE, APPELLANT.

Filed July 30, 2019.    No. A-18-978.

Appeal from the District Court for Lancaster County: JOHN A. COLBORN, Judge. Affirmed.

Joe Nigro, Lancaster County Public Defender, and Shawn Elliott for appellant.

Douglas J. Peterson, Attorney General, and Jordan Osborne for appellee.

PIRTLE, ARTERBURN, and WELCH, Judges.

WELCH, Judge.

## I. INTRODUCTION

Brandon W. Valentine appeals his conviction of manslaughter and the sentence imposed thereon. He contends that the sentence imposed was excessive and raises several claims of ineffective assistance of counsel. For the reasons stated below, we affirm the district court and find that his claims of ineffective assistance of counsel fail except for his claim that his trial counsel was ineffective in failing to challenge certain portions of the presentence investigation report because the record on direct appeal is insufficient to review that claim.

## II. STATEMENT OF FACTS

In March 2018, Valentine was driving over 70 miles per hour in a 30 mile-per-hour zone when he crashed into another vehicle. The driver of the other vehicle suffered a broken pelvis and his 8-year-old passenger was killed. Valentine's preliminary breath test measured his breath alcohol concentration at .066 grams of alcohol per 210 liters of his breath. Officers searched

- 1 -

Valentine's vehicle after obtaining his consent and discovered the vehicle's airbag control module indicated that 5 seconds prior to the crash, Valentine was driving 85 miles per hour and had slowed to 67 miles per hour at the time of impact. Valentine was charged with manslaughter, a Class IIA felony. See Rev. Stat. § 28-305 (Reissue 2016).

Early in the case, the State filed a motion in limine requesting a *Daubert*/*Schafersman* hearing governing the admissibility of "FARO scans and measurements obtained from the FARO scan." See, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993); *Schafersman v. Agland Coop*, 262 Neb. 215, 631 N.W.2d 862 (2001). The motion acknowledged that the State was "unaware of any Nebraska court that has ruled on the admissibility of a 3D scan or other evidence obtained from the scan." Valentine responded by filing a motion to produce evidence related to FARO scan testing and/or analysis noting that the "science is novel and requires a great deal of expertise to understand" and that, "because the State intends to introduce a novel science that has not been found to be admissible by any Court in the State of Nebraska," Valentine needed a large quantity of materials from the State relating to the FARO scan testing and analysis. After the State sought to endorse an additional expert witness on motor vehicle collisions, Valentine filed a motion in limine objecting to the State's use of a "fantastical high tech projected three dimensional reconstruction" at trial on the grounds that it was cumulative, unfairly prejudicial, would waste time, and would create unnecessary expense. Valentine's motion in limine was denied. He later filed another motion in limine requesting that the court enter an order "prohibiting the State from putting on trial testimony about FARO reconstruction technology and from displaying any images created with FARO reconstruction technology." Further, defense counsel successfully objected to a telephonic deposition of one of the State's expert witnesses, which resulted in the deposition being conducted, in person, in Michigan.

Prior to the scheduled date of the *Daubert*/*Schafersman* hearing, Valentine pled guilty to the charged offense. As part of the plea agreement, the State agreed not to file further charges including a potential felony motor vehicle homicide charge.

At the time of the preparation of the presentence investigation report (PSR), Valentine was 23 years old, was a high school graduate, and had been consistently employed. Valentine's criminal history is minimal consisting of two convictions of driving without a valid license. The level of service/case management inventory (LS/CMI) assessed Valentine as a very high risk to reoffend. Factors that contributed to this assessment included that Valentine admitted drinking "maybe a 12-pack" two to three times a week at the time of the accident; his lack of family or friends who would support him in law abiding activity; and his attitude including minimization of his crime. An attachment to the PSR included a witness account which set forth that, shortly prior to the collision, Valentine accelerated to the point that his vehicle fishtailed. Valentine told the interviewing probation officer that he did so because the headlights from his friend's vehicle were shining in his eyes. After the crash, Valentine lied to police officers that he had been going about 45 miles per hour. The interviewing officer noted that Valentine did not seem to recognize anything wrong with the way he accelerated dramatically, did not seem to be accepting full responsibility for the offense, and Valentine negated his own responsibility by asserting that the victim's car pulled out in front of him.

At the sentencing hearing, defense counsel argued that the assessment that Valentine was a very high risk to reoffend lacked foundation. He argued that the risk assessments from the various areas that contributed to that conclusion in the LS/CMI were inappropriate pointing specifically as to Valentine's alcohol use. Defense counsel presented evidence of a blood draw taken shortly after Valentine's preliminary breath test which showed that Valentine had a blood alcohol content of .014 of a gram per 100 milliliters of blood. He argued that the PSR unfairly depicted Valentine as an alcoholic and this offense was not caused by, nor was it about, alcohol.

Defense counsel further argued that Valentine took responsibility for his actions. He then argued that the victim's father pulled out into the road in front of Valentine's vehicle without stopping at a stop sign and should also take some responsibility for the victim's death. Defense counsel also explained that, although the PSR indicated that Valentine looked away from the interviewer and would not really answer a question about the victim's death, Valentine looked away because he "couldn't speak anymore . . . couldn't look the investigator in the eye, because it is an emotional situation for Mr. Valentine too. He takes responsibility . . ."

The court stated:

> In determining the appropriate sentence, the Court considers a number of factors. You do stand convicted of a Class IIA felony. It carries a penalty of up to 20 years imprisonment. I certainly take into consideration the comments of your attorney, and your comments and all the information provided in the presentence report.

> But in determining the appropriate sentence, one of the most important things the Court has to take into consideration is the protection of the public. I cannot ignore the surrounding facts and circumstances of this crime. By your own acknowledgement you were hungover that morning. You were travelling in a 30 mile per hour speed zone, well in excess of two times the speed limit. Some estimates in excess of 80 miles an hour.

> . . . As a result of your actions, a young child died. His father was very seriously injured, and in the photographs, the car that they were riding in was just literally destroyed. The evidence of the speed at which you were travelling in a 30 mile per hour zone.

> Having regard for the nature and circumstances of the crime, and the history, character, and condition of the Defendant, the Court finds that imprisonment of the Defendant is necessary for the protection of the public, because the risk is substantial that during any period of probation the Defendant would engage in additional criminal conduct, and because a lesser sentence would depreciate the seriousness of the Defendant's crime and promote disrespect for the law.

The district court sentenced Valentine to 16 to 18 years' imprisonment with credit for 175 days served. Valentine has timely appealed to this court. On appeal, he is represented by different counsel than represented him during trial and sentencing.

### III. ASSIGNMENTS OF ERROR

On appeal, Valentine's assignments of error, restated and consolidated, are that: (1) the sentence imposed was excessive; and (2) his trial counsel was ineffective in: (a) failing to provide him with discovery and investigative reports and failing to explain the State's evidence and his

- 3 -

possible defenses which prevented him from making an informed decision about whether to proceed to trial; (b) failing to challenge the admissibility of the State's proposed expert witness or retain an expert for the defense; and (c) failing to adequately represent him at sentencing.

## IV. STANDARD OF REVIEW

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Hunt*, 299 Neb. 573, 909 N.W.2d 363 (2018).

Appellate review of a claim of ineffective assistance of counsel is a mixed question of law and fact. *State v. Chairez*, 302 Neb. 731, 924 N.W.2d 725 (2019). When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error. *Id.* With regard to the questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), an appellate court reviews such legal determinations independently of the lower court's decision. *Id.*

In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id.*

## V. ANALYSIS

### 1. EXCESSIVE SENTENCE

Valentine first contends that the court abused its discretion by imposing an excessive sentence. Valentine was convicted of manslaughter, a Class IIA felony, which is punishable by 0 to 20 years' imprisonment. See Neb. Rev. Stat. § 28-105 (Reissue 2016). Thus, Valentine's sentence of 16 to 18 years' imprisonment was within the statutory guidelines.

Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. State v. *Chacon*, 296 Neb. 203, 894 N.W.2d 238 (2017). When imposing a sentence, the sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the violence involved in the commission of the offense. *Id.* The sentencing court is not limited to any mathematically applied set of factors. *Id.*

Here, the sentencing court considered the appropriate factors and noted that a sentence of imprisonment was necessary to protect the public and that a lesser sentence would depreciate the seriousness of the crime and promote disrespect for the law. Valentine's actions in driving nearly 80 m.p.h. in a 30 m.p.h. zone caused the death of an 8-year-old child and caused serious bodily injury to the child's father. Further, Valentine received the benefit of the plea agreement wherein the State agreed not to file additional charges including a potential felony motor vehicle homicide charge.

Based upon the facts that the sentence imposed was within the statutory sentencing range, the benefit Valentine received from the plea agreement, Valentine's risk to reoffend, his minimization of the offense, his failure to take responsibility for his actions, the seriousness of the offense, and the harm caused to the victim and his family, we find no abuse of discretion by the district court in the sentence imposed.

### 2. INEFFECTIVE ASSISTANCE OF COUNSEL

Valentine also asserts that he received ineffective assistance of trial counsel in: (a) failing to provide him with discovery and investigative reports and/or failing to explain the State's evidence against him or defenses available to him which prevented him from making an informed decision about whether to proceed to trial; (b) failing to challenge the admissibility to the State's proposed expert witness or retain a defense expert to counter such testimony; and (c) failing to adequately represent him at sentencing.

When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record, in order to preserve such claim. *State v. Chairez*, 302 Neb. 731, 924 N.W.2d 725 (2019). The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved: On direct appeal, the resolution of ineffective assistance of counsel claims turns upon the sufficiency of the record. *State v. Mora*, 298 Neb. 185, 903 N.W.2d 244 (2017). The determining factor is whether the record is sufficient to adequately review the question. *Id*.

Further, an appellate court can determine whether the record proves or rebuts the merits of a claim of ineffective assistance of trial counsel only if it has knowledge of the specific conduct alleged to constitute deficient performance. *Id*. An ineffective assistance of counsel claim is raised on direct appeal when allegations of deficient performance are made with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to be able to recognize whether the claim was brought before the appellate court. *Id*. A claim insufficiently stated is no different than a claim not stated at all. *Id*.

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Huston*, 302 Neb. 202, 922 N.W.2d 723 (2019). When a conviction is based upon a guilty or no contest plea, the prejudice requirement for an ineffective assistance of counsel claim is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading guilty or no contest. *State v. Barrera-Garrido*, 296 Neb. 647, 895 N.W.2d 661 (2017).

### (a) Failure to Provide Discovery and Investigative Reports and/or Explain State's Evidence or Possible Defenses

Valentine contends that his trial counsel's ineffectiveness in failing to provide him with discovery and investigative reports and/or explain the State's evidence and possible defenses

prevented him from making an informed decision about whether to proceed to trial. Valentine specifically claims that he "felt that he was in the dark about the evidence that the State intended to offer at trial." Brief for appellant at 27.

At the plea hearing, the following colloquy occurred between the court and Valentine:

THE COURT: Have you had an adequate amount of time to discuss this case with both of your attorneys?

THE DEFENDANT: Yes.

THE COURT: Have you gone over all the facts and possible consequences with your attorneys?

THE DEFENDANT: Yes.

THE COURT: Have you discussed all possible defenses that you may have to these charges with your attorneys?

THE DEFENDANT: Yes.

THE COURT: Have you told your attorneys everything you know about this case?

THE DEFENDANT: Yes.

THE COURT: Previously, a motion had been filed to exclude some evidence. You understand that by entering this plea of guilty here today, you're going to waive any right to challenge that evidence. Do you understand that?

THE DEFENDANT: Yes.

THE COURT. Have your attorneys interviewed all the witnesses that you want them to interview?

THE DEFENDNANT: Yes.

THE COURT: Are there any depositions or any additional discovery that you want them to do?

THE DEFENDANT: No.

THE COURT: And you've discussed every -- all the facts with your attorneys?

THE DEFENDANT: Yes.

THE COURT: There's nothing more you want them to do?

THE DEFENDANT: No.

THE COURT: Okay. Are you satisfied that they are both competently representing you?

THE DEFENDANT: Yes.

Based on Valentine's own on-the-record statements, Valentine acknowledged he had discussed all possible defenses with his counsel, his counsel did everything that he asked, and he was satisfied with his counsel's representation. Arguing now that his counsel failed to provide him with discovery or investigative reports or explain the State's evidence and possible defenses stands in stark contrast to Valentine's specific representations to the trial court. As the Nebraska Supreme Court has noted, a defendant cannot secure relief by recanting assurances made to the trial court during the sanctity of a full and formal court proceeding "'after the doors of the prison clang shut.'" *State v. Vanderpool,* 286 Neb. 111, 118, 835 N.W.2d 52, 58 (2013) (quoting *State v. Scholl,* 227 Neb. 572, 419 N.W.2d 137 (1988)).

Valentine also argues that "trial counsel did not explain to him the laws that determined such things as the admissibility of evidence, the burden of proof, the presumption of innocence and what the State would be required to prove to convict him of the charged offense." Brief for appellant at 29. However, during the plea hearing, the trial court advised Valentine of his rights including the right to trial by jury, the right to confront his accusers, the right to present witnesses in his defense, the right against self-incrimination, the State's burden to prove his guilt beyond a reasonable doubt if he went to trial, his waiver of any challenge to a search and seizure or statements upon his plea, and the presumption of innocence. Valentine acknowledged that he understood his rights and that he was giving up those rights by pleading guilty to the charged offense. Thus, we find that Valentine's statements made at his plea hearing affirmatively refute his claim that his trial counsel was ineffective for failing to provide him with discovery or investigative reports or explain the State's evidence and possible defenses or for failing to explain to him the laws that determined such things as the admissibility of evidence, the burden of proof, the presumption of innocence, and what the State would be required to prove to convict him of the charged offense. Accordingly, this assignment of error fails.

### (b) Failure to Prepare a Defense

Valentine also contends that his trial counsel was ineffective in failing to prepare a defense, specifically, in failing to challenge the admissibility of the State's proposed expert witness and to retain a defense expert to counter such evidence. Valentine's assignment of error relates specifically to the State's stated intent to adduce evidence relating to FARO scans which the State indicated is novel scientific evidence in Nebraska. The State requested, and the district court scheduled, a *Daubert/Schafersman* hearing to determine the admissibility of the FARO evidence.

Contrary to Valentine's assertions, the record establishes that trial counsel filed a motion for discovery to obtain documentation in order to prepare for the *Daubert/Schafersman* hearing, sought to exclude the FARO evidence, and successfully objected to a telephonic deposition of the State's expert witness. Prior to the scheduled *Daubert/Schafersman* hearing, Valentine pled guilty to manslaughter. The record on appeal is sufficient to consider this claim and establishes that trial counsel was preparing to defend against the State's FARO evidence if that evidence was found to be admissible at trial. This assignment of error is affirmatively refuted by the record and therefore fails.

### (c) Ineffectiveness During Sentencing Hearing

Valentine's final assignment of error is that counsel was ineffective during the sentencing phase. Specifically, he contends that counsel was ineffective in (i) failing to solicit letters of support for him, (ii) failing to challenge certain inaccurate conclusions made by the probation officer in his PSR, and (iii) inappropriately placing blame on the victim's father.

### *(i) Letters of Support*

First, Valentine contends that trial counsel should have solicited letters of support for him from his family, friends, and his employer. He claims that his family, friends, and employer would have submitted letters which would have demonstrated to the court that he was a young man who

deserved a second chance. However, he provides no more specificity on the specific individuals from whom defense counsel should have requested letters of support, what information those individuals would have provided to the court, or how the information would have helped at his sentencing.

In *State v. Abdullah*, 289 Neb. 123, 133, 853 N.W.2d 858, 866 (2014), the Nebraska Supreme Court found that Abdullah's argument that counsel was deficient for failing to call "'at least two witnesses that [Abdullah] informed would be beneficial to his case'" could raise a potential issue of deficient performance if proven. But, the court said, our case law is clear that were this a motion for postconviction relief, Abdullah would be required to specifically allege what the testimony of these witnesses would have been if they had been called in order to avoid dismissal without an evidentiary hearing. *State v. Abdullah, supra.*

Similarly, Valentine was required to allege the persons from whom trial counsel should have requested letters and what the content of the letters would have been. Valentine's claim that counsel was ineffective for failing to solicit letters of support did not contain sufficient specificity and therefore fails.

*(ii) Conclusions by Probation Officer Contained in PSR*

Second, Valentine argues counsel was ineffective in failing to challenge "several unfounded conclusions of the probation officer" contained in the PSR. Specifically, he objects to his trial counsel's failure to challenge the probation officer's conclusions in the PSR that Valentine: (a) did not take responsibility for the offense; (b) had a reduced ability or inability to experience guilt and shame; (c) had a history of antisocial behavior; and (d) had an official record of violent and assaultive behavior. Valentine claims that these "faulty conclusions" led to the probation officer's inaccurate assessment that he was a very high risk to reoffend. Valentine argues that his trial counsel "only briefly took exception to the probation officer's claim that [Valentine] had not taken responsibility for the offense" and argues that counsel "should have meaningfully challenged each of the erroneous conclusions made by the probation officer." Brief for appellant at 32.

Upon our review of the record, we find that Valentine's trial counsel did challenge that portion of the PSR which reported that Valentine did not take responsibility for the offense and the probation officer's assessment that Valentine was a very high risk to reoffend. Because the record refutes Valentine's claim that his counsel was ineffective for failing to challenge those aspects of the PSR, we find that those claims fail.

Conversely, the record does not reflect that Valentine's counsel specifically challenged those portions of the PSR where the probation officer indicated that Valentine had "the possibility of reduced ability or inability to experience guilt/shame," that Valentine had an "official record of violence/assault," and that he had "engaged in early and diverse antisocial behavior." The court acknowledged that it reviewed the entirety of the PSR prior to sentencing Valentine. Because the record reflects that trial counsel did not challenge those contentions made in the PSR, and because the record is otherwise insufficient to determine the accuracy of those contest portions of the PSR, we find that the record on direct appeal is insufficient to consider his claim.

*(iii) Placing Blame*

Finally, Valentine argues that his counsel was ineffective in his remarks to the district court by attempting to place some blame for the victim's death on the victim's father. Specifically, he alleges that his trial counsel was deficient for informing the court that Valentine was the only party to take responsibility for the victim's death and that the victim's father had not stopped at a stop sign which contributed to the accident. Valentine argues that "[s]uch argument, given the plea that [Valentine] had entered, was repugnant and had no chance to sway the court at sentencing. Rather, that argument could only hurt [Valentine] at sentencing as it contradicted his claim that he had taken responsibility for the offense and was truly remorseful." Brief for appellant at 33.

Some types of attack upon effectiveness of counsel cannot be reached upon a direct appeal because the evidence which may bear upon such a determination is not shown in the trial record. *State v. Kelley*, 265 Neb. 563, 658 N.W.2d 279 (2003). After reviewing the record in this case, we find that the record on direct appeal is sufficient for this court to review this claim of ineffective assistance of counsel.

Trial counsel's argument to the sentencing court clearly constitutes a matter of trial strategy. The Nebraska Supreme Court has previously held that "[t]rial counsel is afforded due deference to formulate trial strategy and tactics, and we are not to second-guess trial counsel's reasonable strategic decisions when reviewing claims of ineffective assistance of counsel." *State v. Manjikian*, 303 Neb. 100, 120, 927 N.W.2d 48, 64 (2019). "When considering whether trial counsel's performance was deficient, there is a strong presumption that counsel acted reasonably." *State v. Nolt*, 298 Neb. 910, 934, 906 N.W.2d 309, 327 (2018). Having reviewed the record, including Valentine's own statements that the victim's father was partially at fault for the accident, we find that counsel's argument was not unreasonable nor could it result in prejudice to Valentine in light of Valentine's own statements contained in the PSR minimizing his responsibility for the accident. This claim fails.

## VI. CONCLUSION

In sum, the sentence imposed was not excessive and Valentine's claims of ineffective assistance of counsel fail except for his claim that trial counsel did not challenge those portions of the PSR where the probation officer indicated that Valentine had "the possibility of reduced ability or inability to experience guilt/shame," that Valentine had an "official record of violence/assault," and that he had "engaged in early and diverse antisocial behavior" because the record on direct appeal is insufficient to consider this claim. Accordingly, Valentine's conviction and sentence are affirmed.

AFFIRMED.